OPINION OF THE COURT
Nicholas Figueroa, J.
In this contested CPLR article 75 proceeding, petitioner seeks to stay an arbitration under section 7503 (b) of the CPLR. As his ground for such relief, petitioner claims that he never agreed to arbitrate. Such a ground is, of course, the type of threshold issue that is for the court to resolve, rather than the arbitrator (Cooper v Bruckner, 21 AD3d 758, 759 [2005]). The underlying facts are not disputed. In early 2007, petitioner retained two law firms to defend him in lawsuits brought in the wake of probes by the Securities and Exchange Commission and U.S. Attorney’s Office into the finances and operations of a company that he had run. The written agreement with one of the law firms, McDermott Will & Emery (MWE), expressly contemplated that the firm might hire “outside providers of services (such as . . . outside consultants)” for purposes of his defense.
On March 26, 2007, the two law firms and respondent signed a letter of engagement (the engagement letter) under which the law firms, “on behalf of our client, David H. Brooks,” retained respondent to perform various consulting services for petitioner’s defense. The engagement letter contained, among other things, a broad arbitration provision.
By the spring of 2009, respondent had been paid some $265,000 for its participation in petitioner’s defense, but claimed that it was due an additional $225,000. Petitioner clearly disagreed, as witness a notice to arbitrate that respondent eventually served upon him.
*447 Petitioner’s challenge to the proposed arbitration rests on the axiom that, as a general rule, no one may be made to arbitrate a private dispute unless he or she has expressly agreed to do so (Matter of Marlene Indus. Corp. [Carnac Textiles], 45 NY2d 327, 333 [1978]). As the party seeking arbitration, respondent has the burden of establishing that there was such an agreement on petitioner’s part (Eiseman Levine Lehrhaupt & Kakoyiannis, P.C. v Torino Jewelers, Ltd., 44 AD3d 581, 583 [2007]).
Ordinarily, respondent’s burden in such respect would appear to be more than satisfied by the documents before the court, i.e., the agreement authorizing petitioner’s lawyers to retain consultants and the engagement letter by which the lawyers did that very thing “on [petitioner’s] behalf.” Petitioner maintains, however, that the record actually establishes the converse.
Petitioner first argues that he was not a party to the arbitration clause contained in the engagement letter because he was not a signatory to the letter itself. In this connection it is noted that petitioner never signed the engagement letter, although the instrument included at its end a line and space for his signature.
It is fundamental, of course, that one who has not personally signed a contract will nonetheless be bound by it if he or she has signed it through an authorized agent. The omission of petitioner’s personal signature is material, therefore, only if that signature was intended as the sine qua non of his being bound. It is noted that the body of the engagement letter does not reflect any such intent. Nor do the terms of petitioner’s delegation to MWE suggest that the latter was not free to enter into a consulting agreement without prior vetting by petitioner.
There is, moreover, positive evidence that the line for petitioner’s signature on the engagement letter was mere surplusage, rather than a precondition to petitioner’s obligations thereunder. Simply put, the evidence is supplied by the parties’ conduct in furtherance of the terms of the letter — including not only respondent’s rendering of services, but also, among other things, petitioner’s funding of respondent’s retainer and his acceptance of the contract’s benefits. Such actions clearly bespeak the parties’ understanding that petitioner (through his agents) had entered into an effective contract with respondent.
Petitioner would argue secondly, however, that, even if the law firms were authorized to bind him to a consulting agreement, and did so, they were nevertheless not authorized to bind him to any arbitration clause. In this connection, petitioner *448 cites several cases purportedly to the effect that an agent cannot make his principal subject to arbitration unless the principal has specifically authorized the agent to agree to an arbitration clause.
The precedents cited by petitioner, however, are inapposite or otherwise unavailing. Thus, for example, in In re Continental Airlines, Inc. (484 F3d 173 [2007]), where a petitioner sought to force respondents to arbitrate under a collective bargaining agreement, neither respondents nor any of their agents had been signatory to such agreement. As another example, Mionis v Bank Julius Baer & Co. (301 AD2d 104 [2002]) only further illustrates that persons who are indisputably strangers to a contract cannot be bound by it (and that no one can be personally bound to perform on a contract that he or she has signed only as an agent).
To be sure, one of the cases cited by petitioner (Matter of J. K. Knitting Mills, Inc. [Dorgin], 273 App Div 591, 595 [1948]) adverts to the proposition that a principal cannot be compelled to arbitrate unless he has “explicitly” authorized his agent to bind him to do so. But the reference appeared in the dissent, was unsupported by citation, and was only dictum at best. Moreover, there are reasons to question the applicability of so blanket a rule in cases such as this.
Indeed, there is at least one precedent, Matter of Wachusett Spinning Mills (Blue Bird Silk Mfg. Co.) (12 Misc 2d 822 [1958], mod on other grounds 7 AD2d 382 [1959]), not cited by either party, that cuts against petitioner’s position that the agent’s authority must be conferred “explicitly.” Simply put, the Wachusett decision supports the view that, in an appropriate context, an agent may bind his principal to an arbitration agreement under an authority that is at least apparent and therefore a basis for an estoppel against the principal.
In Wachusett, the operators of yarn spinning mills sought to stay an arbitration commenced by a textile manufacturer under several alleged contracts. Among other grounds for the stay, petitioners argued that the arbitration contracts had been signed ostensibly on their behalf by a sales agent and factor and that such an agent did not have the authority to bind them to an arbitration agreement. The Wachusett court disagreed, noting that
“[a]s sales agent for Wachusett, Fitchburg Sales, regardless of its actual authority, possessed apparent . . . authority sufficient to bind Wachusett.... *449 The fact that the accepted orders contained an arbitration clause does not alter this conclusion, for, as the Court of Appeals observed in Matter of Helen Whiting, Inc. . . . (307 N. Y. 360) at page 367: ‘From our own experience, we can almost take judicial notice that arbitration clauses are commonly used in the textile industry’. A customer dealing with a general sales agent has the right to assume that the latter has authority to enter into a contract, on behalf of its principal, containing an arbitration clause, particularly a textile contract which commonly contains such a provision.” {Id. at 829.)
The instant proceeding involves not a textile industry transaction, but a consulting contract. However, modern case law (a source whose accuracy is not subject to reasonable dispute) is replete with cases showing that arbitration clauses are a commonplace in contracts involving the hiring of experts in securities, finance, tax, accountancy, and the like. Accordingly, when respondent came to terms with petitioner’s agents, it was entitled to assume that it could rely on those terms. In other words, unlike one of the cases cited by petitioner, Matter of Gold (Broido, Inc.) (185 Mise 1039 [1945]), an arbitration clause was not so unusual a feature of the contract here as to have obliged respondent to probe behind the appearance of things to see whether the law firms were specifically authorized to agree to such a clause.
Moreover, the record indicates that the law firms’ authority was not only apparent, but also, implied and thus actual. That is, at least on its face, petitioner’s letter agreement with MWE seems to confer carte blanche on the lawyers to take such action as they might from time to time deem necessary to secure forensic experts for his defense. Petitioner has not alleged any facts to suggest that MWE, despite its apparently blanket authority, was nevertheless constrained to seek petitioner’s express assent to an arbitration clause before retaining such an expert on mutually acceptable terms.
In this last connection, it is noted that the record is silent as to whether petitioner read the engagement letter by the time he funded respondent’s retainer or instead was content to leave it unread. But whether the one or the other, the conclusion would be the same. Thus, if petitioner read the engagement letter, but remained silent during the years in which he was receiving the benefits of respondent’s work, he ratified the letter’s provisions. If, on the other hand, he did not read it, that would only confirm *450 that he had authorized his agents to enter into retainers on such reasonable terms as they in their discretion saw fit and that he was content to allow events to unfold in accordance with their choices.
This is not to ignore the Court of Appeals decision in Matter of Michel, Inc. v Whitecourt Constr. Corp. (264 NY 23 [1934]), which is mentioned to demonstrate that it has not been overlooked. That decision has been cited as authority for the proposition that lawyers exceed their authority when they purport to relegate their clients’ claims to arbitration without their clients’ prior consent (Annotation, Attorney’s Submission of Dispute to Arbitration, or Amendment of Arbitration Agreement, without Client’s Knowledge or Consent, 48 ALR4th 127). In fact, however, Michel stands for a considerably narrower principle. The attorney in question had been retained to represent the client in a pending action, a circumstance that the Court of Appeals noted was “hardly” basis from which to “presume [ ] [the client] to have intended to vest the attorney with authority to remove the controversy from the courts into a forum of his own creation” (264 NY at 29). In other words, the lawyer had been retained for purposes of a litigation in a judicial forum. As a practical matter, under such a circumstance it could not have been expected that the terms of the lawyer’s retainer could be substantially changed without the client’s consent. No such element of purported change is involved in the instant case, and Michel is therefore not apposite.
For the foregoing reasons, it is concluded that petitioner was a party to the arbitration agreement. Accordingly, it is not necessary to consider whether he in any event waived his right to seek a stay.
The petition to stay arbitration is dismissed.