In the Matter of the **ARBITRATION BETWEEN NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, P.A., Petitioners,**

v.

**PERSONNEL PLUS, INC., and Great Dane Management Services, Inc., Respondents.**

**No. 12 Civ. 4647(JSR).**

United States District Court, S.D. New York.

July 22, 2013.

---

Andrew Douglas Hart, Andrew W. Stern, Nicholas Primer Crowell, Sidley Austin LLP, New York, NY, for Petitioners.

Javier Van Oordt, Callahan & Blaine, APLC, Santa Ana, CA, for Respondents.

## MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

Petitioner National Union Fire Insurance Co. of Pittsburgh ("National Union") contracted with respondent Personnel Plus, Inc., a California corporation that provides temporary help services, to provide workers' compensation liability insurance (the "Insurance Program") for Personnel Plus and its affiliate, co-respondent Great Dane Management Services, Inc., from September 1, 2007 through September 1, 2010. Pet. to Appoint an Umpire ("Pet.") ¶¶ 6–8, 12–14. The Insurance Program was governed by, among other agreements, the "Payment Agreement for Insurance Agreement for Insurance and Risk Management Services" (the "Payment Agreement") and the "2006 Addendum to Payment Agreement" (the "Addendum"). *Id.* ¶ 15.

The various agreements included a mandatory arbitration provision requiring that any "unresolved dispute must be submitted to arbitration." Decl. of Andrew D. Hart in Supp. of Pet. for the Appointment of an Umpire ("Hart Decl."), Ex. A (Payment Agreement) at 8. The Payment Agreement further provided for arbitration by a tripartite panel of arbitrators, with each party choosing one arbitrator and then those party-appointed arbitrators choosing a neutral third arbitrator (the "neutral umpire"). *Id.* The Payment Agreement further granted each party to the dispute thirty days to select its arbitrator and then gave the two party-appointed arbitrators an additional thirty days to appoint the neutral umpire. *Id.;* Hart Decl. Ex. B ("Addendum") at § 6. In the event that the party-appointed arbitrators failed to select a neutral umpire by the expiration of the thirty-day deadline, the arbitration clause allowed either party to

make an application to this Court to make the selection for them.

On February 28, 2011, petitioner demanded payment from respondents in relation to the Insurance Program in the amount of $6,643,924, which respondents disputed and refused to pay. Pet. ¶ 19. On September 28, 2011, having failed to resolve this dispute, petitioner served on respondents a demand for arbitration. *See* Hart Decl. Ex. D. Between late October and early November 2011, the parties appointed their respective arbitrators, and in February 2012, petitioner and respondents each submitted to the party-appointed arbitrators a list of candidates to fill the neutral umpire position. Pet. ¶ 21. On June 13, 2012, petitioner filed in this Court the instant petition for the appointment of an umpire, asserting that the arbitration agreement's thirty-day period in which the arbitrators were to select the umpire had passed and no one had been appointed.

On July 20, 2012, the Court heard oral argument on the petition and later received post-argument briefing on issues raised by respondents at oral argument. After fully considering the parties' written submissions and oral argument, the Court on January 11, 2013 granted National Union's petition for the appointment of a neutral arbitrator and, on January 25, 2013, appointed Kevin Martin as neutral arbitrator. This Memorandum Order explains the reasons for those decisions and directs the closing of this case.

■ "Arbitration is contractual by nature." *Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995). Thus, when enforcing an agreement to arbitrate, "courts ... must give effect to the contractual rights and expectations of the parties." *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 130 S.Ct. 1758, 1773–74, 176 L.Ed.2d 605 (2010). Here, after the party-appointed

arbitrators failed to select a neutral umpire, National Union petitioned this Court to make the appointment pursuant to both the terms of the parties' agreement and the Federal Arbitration Act. *See* Addendum at § 6; 9 U.S.C. § 5 (2006) ("[I]f a method [of naming or appointing an arbitrator] be provided [in the agreement] and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire ..., then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire....").

■ Respondents raised a number of threshold objections to National Union's petition. First, respondents noted that only Personnel Plus, and not Great Dane, signed the relevant agreements with National Union. Thus, because Great Dane was not a signatory to any written agreement with National Union, respondents argued that Great Dane could not be required to arbitrate any dispute it had with National Union. It is true that, because arbitration is a creature of contract, generally "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). However, the Second Circuit has recognized five circumstances in which non-signatories can be bound to arbitration agreements signed by another: "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir.1995).

■ Agency clearly applies here. Under traditional principles of agency law, "[o]ne who has not personally signed a

contract will nonetheless be bound by it if he or she has signed it through an authorized agent." *Brooks v. BDO Seidman, LLP,* 25 Misc.3d 445, 883 N.Y.S.2d 450, 452 (Sup.Ct.2009). In order to bind a principal to an agreement signed by its purported agent, that agent must have actual or apparent authority to act on behalf of the principal. *Hidden Brook Air, Inc. v. Thabet Aviation Int'l, Inc.,* 241 F.Supp.2d 246, 260 (S.D.N.Y.2002). Actual authority exists when the principal's words or actions invest authority in the agent, whereas apparent authority arises from "representations made by the principal to a third party [that] created the appearance of authority," even if those representations are "not ... made through actual contact between the principal and third party." *Id.* at 261.

■ Here, Personnel Plus had both actual and apparent authority to act as Great Dane's agent in signing the various agreements making up the Insurance Program—and thus in agreeing to the arbitration provision contained therein. As to actual authority, the Payment Agreement defines "You," *i.e.,* one of the parties to the agreement, as including both "the person or organization named as [the] Client in the title page of this Agreement" and "each of its ... affiliated ... organizations." Payment Agreement at 4. Great Dane is both a named insured under two insurance policies between Personnel Plus and National Union, *see* Supplemental Decl. of Andrew D. Hart in Supp. of Pet. for the Appointment of an Umpire ("Supplemental Hart Decl.") Exs. 2, 3, 5 & 6, making it one of the "named" entities under the contract, and an "affiliated organization" of Personnel Plus for reasons that also speak to Personnel Plus's apparent authority to contract on Great Dane's behalf.

The following connections between Great Dane and Personnel Plus also support an agency relationship: Personnel Plus is owned by Bob and Kim Walia, while Great Dane is owned by their son, Jairaj Walia, Supplemental Hart Decl. Ex. 8; financial documents identify Great Dane as a "related party to" Personnel Plus and an "affiliated entity" of the Walias, *id.* Ex. 7 at 12, Ex. 10 at 2; Kim Walia signed documents on behalf of both Great Dane and Personnel Plus and identified herself as an "Owner or Officer" of both, *id.* Ex. 9; and, finally, Personnel Plus's insurance broker submitted application materials on behalf of both Personnel Plus and Great Dane in connection with Personnel Plus's Insurance Program with National Union, *id.* Exs. 8, 11, 12. These facts sufficiently indicate that Great Dane either actually or apparently authorized Personnel Plus to obtain insurance on its behalf, and Great Dane thus may not be allowed to repudiate the contract at this point.

Respondents next argued that, under the terms of the arbitration agreement, this Court does not have authority to appoint a neutral umpire. In support of this argument, respondents noted that the arbitration provision in the Payment Agreement provides that "either party may make an application to a Justice of the Supreme Court of the State of New York, County of New York." Payment Agreement at 8. However, the Addendum provides that "either party may make application only to a court of competent jurisdiction in the City, County, and State of New York." Addendum at § 6.

■ Both agreements were executed by the parties on the same day, so respondents argue that the conflict in these terms creates a contractual ambiguity as to whether a party must file a petition to appoint an arbitrator in New York Supreme Court or in any "court of competent

jurisdiction in the City, County, and State of New York," which would include this Court. Respondents further argue that this ambiguity must be construed against National Union as the drafter of the agreements and therefore must be read to require filing in New York Supreme Court, compelling dismissal of the instant petition. However, when read in context, there is no ambiguity in the contract, and so the Court must enforce the agreement as written. Under the heading for "Arbitration Procedures," the Addendum states that the "How Arbitrators Must Be Chosen" provision in the original Payment Agreement "is deleted and replaced with" the language allowing filing in any "court of competent jurisdiction in the City, County, and State of New York." Addendum at § 6. Given this explicit instruction, it is clear that the provision in the Addendum controls, and thus this Court may properly entertain National Union's petition.

■ In a related vein, respondents argued that this Court was not "a court of competent jurisdiction," as required by the above provision, because, respondents claim, this Court cannot properly exercise personal jurisdiction over the respondents (two California corporations who do business only in California) and therefore National Union's petition must be dismissed. However, "[p]arties can consent to personal jurisdiction through forum-selection clauses in contractual agreements," and those clauses "are regularly enforced." *D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 103 (2d Cir.2006).

■ In determining whether a forum-selection clause is valid and enforceable, courts within the Second Circuit look to: (1) "whether the clause was reasonably communicated to the party resisting enforcement"; (2) whether "the clause [was] mandatory or permissive"; (3) "whether

the claims and parties involved in the suit are subject to the forum selection clause"; and (4) "whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Phillips v. Audio Active, Ltd.,* 494 F.3d 378, 383–84 (2d Cir.2007) (internal quotation marks omitted).

■ As to the first element, it is evident that the forum-selection clause was clearly communicated in the Payment Agreement, as the relatively short agreement sets forth the forum-selection clause under the bold-faced and capitalized heading, "How Will Disagreements Be Resolved? Arbitration Procedures" and specifies that disagreements can be brought "only to a court of competent jurisdiction in the City, County, and State of New York." Moreover, as a party closely related to Personnel Plus, Great Dane may fairly be deemed to have been on notice of the terms of the Payment Agreement and thus may also be bound by the forum-selection clause therein. *See Recurrent Capital Bridge Fund I, LLC v. ISR Systems & Sensors Corp.,* 875 F.Supp.2d 297, 307 (S.D.N.Y.2012) ("A non-party to a contract may be subject to its forum selection clause if the non-party is so 'closely related' to either the parties to the contract or the contract dispute itself that enforcement of the clause against the non-party is . . . foreseeable prior to suit.").

■ As to the second element, the arbitration agreement's forum-selection clause is explicitly mandatory, not permissive, as it says disagreements regarding arbitration may be brought "only" in a court in New York. Addendum at § 6.

As to the third factor, the dispute at issue—the failure of the parties to the

agreement "to agree on a third arbitrator within 30 days of [the two arbitrators'] appointment"—is specifically contemplated in the agreement. *Id.*

Finally, as to the fourth element, a forum-selection clause "is presumptively enforceable" absent a showing by respondents that enforcement would be unreasonable or unjust, *see Phillips*, 494 F.3d at 383, and respondents have failed to set forth any reason why this would be so.

■ Since all four elements of this test were therefore met, the Court found that the forum-selection clause represented the parties' valid consent to the jurisdiction of this Court. In such circumstances, "it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process," *Export–Import Bank of the U.S. v. Hi–Films S.A. de C.V.*, No. 09–CV–3573, 2010 WL 3743826, at *4 (S.D.N.Y. Sept. 24, 2010), and respondents jurisdictional objections were rejected.

At oral argument, respondents sought a stay of proceedings in the instant petition on the ground that the Payment Agreement was unenforceable under California state insurance law. Respondents also informed the Court at oral argument and its later written submission that (1) on July 18, 2012, respondents filed a complaint against National Union and other affiliated entities in Superior Court for the State of California (which has since been removed to federal court), which addressed many of the issues that National Union seeks to submit to arbitration; and (2) they submitted a letter to the California Department of Insurance (CDI) on July 26, 2012, requesting that the CDI institute an enforcement action against National Union. *See* Decl. of Javier H. Van Oordt in Supp. Supplemental Opp. ("Oordt Decl.") Exs. B, E.

■ Under the Federal Arbitration Act ("FAA"), if a party seeks to challenge a contract's validity as a whole, rather than the validity of the arbitration clause specifically, that challenge must be considered by the arbitral panel in the first instance. *See Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 130 S.Ct. 2772, 2778–79, 177 L.Ed.2d 403 (2010) (stating that, when challenging the validity of the whole contract, courts "must treat [the agreement to arbitrate a dispute] as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator"). Additionally, the arbitration provision at issue here provides that the arbitral panel "will have exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability." Payment Agreement at 9.

■ Here, respondents challenged the validity of the entirety of the Payment Agreement on the ground that this agreement, which forms part of the insurance policy it received from National Union, was not submitted to the CDI as required under California Insurance Code § 11658, so that the Payment Agreement, and the arbitration provisions contained therein, were unenforceable. *See* Cal. Ins.Code § 11658 ("A workers' compensation insurance policy or endorsement shall not be issued by an insurer to any person in this state unless the insurer files a copy of the form or endorsement with the rating organization ... and 30 days have expired from the date the form or endorsement is received by the commissioner ... without notice from the commissioner...."). Because this is a challenge to the Payment Agreement generally, not to its arbitration provision specifically, under the FAA the Court may address National Union's petition and appoint a neutral arbitrator, and

the issue of arbitrability should be submitted to the arbitral panel.

 Additionally, the Court is not convinced by respondents' argument that the McCarran–Ferguson Act prevents the FAA from operating in these circumstances. Under the McCarran–Ferguson Act, "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). Although the FAA does not "specifically relate[ ] to the business of insurance," nor does it "invalidate, impair, or supersede" Cal. Ins.Code § 11658, as the statutes address completely different matters. The California statute requires submission of insurance policies to a state agency before they may be enforced, which does not speak to whether an arbitrator may be empowered to decide whether the insurance agreement is unenforceable based on an alleged failure to follow the terms of the statute. *See Nat'l Union Fire Ins. Co. v. Priority Bus. Servs., Inc.,* No. 651960/11, slip op. at 5 (N.Y.Sup.Ct. Mar. 16, 2012) (finding no "inherent and direct conflict between Cal. Ins.Code § 11658 and arbitration as a dispute resolution mechanism" because § 11658 "does not even address arbitration," the § 11658 issue "goes to the merits of the underlying contract dispute," and "the California insurance laws are not impaired by the agreement to arbitrate"). Because there is no conflict, the McCarran–Ferguson Act does not come into play, and the Court applies the FAA. Thus, the question of the Payment Agreement's enforceability must be submitted to arbitration.

 As to the issues raised in respondents' late-filed suit against National Union in California, petitioner asks the Court to compel respondents to submit those claims to arbitration. "Agreements to arbitrate that fall within the scope and coverage of the Federal Arbitration Act ... must be enforced in state and federal courts." *See KPMG LLP v. Cocchi,* —— U.S. ——, 132 S.Ct. 23, 24, 181 L.Ed.2d 323 (2011). Therefore, whether a dispute must be submitted to arbitration is limited to two questions: (1) whether a valid agreement to arbitrate exists, and (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement. *Hartford Accident & Indemnity Co. v. Swiss Reinsurance Am. Corp.,* 246 F.3d 219, 226 (2d Cir.2001). Here, as discussed above, while the first element is contested, nonetheless at this stage the arbitration agreement's enforceability must be assumed where the challenge is to the Payment Agreement as a whole. *See Rent-A-Center,* 130 S.Ct. at 2778–79. As to the second issue, the arbitration clause provides that any unresolved dispute "about any amount of [respondents'] Payment Obligation that [petitioner has] asked [respondent] to pay" and "[a]ny other unresolved dispute arising out of this Agreement" are subject to arbitration. Payment Agreement at 8. Here, the claims raised by respondents in the complaint in their California lawsuit either directly concern respondents' "Payment Obligation" or arise out of the Payment Agreement, and thus fall within the scope of the arbitration agreement. *See* Oordt Decl. Ex. B. Moreover, the California litigation appears to be an improper attempt to shift this dispute to respondents' preferred forum in contravention of the forum-selection clause and of their agreement to arbitrate their disputes, and respondents have failed to put forth any compelling reason why this should be permitted. Thus, in its January 11, 2013 Order, the Court found that the claims raised against National Union in

the respondents' California action should also be submitted to arbitration.

Having rejected each of the respondents' objections to arbitration, the Court returned to petitioner's request that the Court appoint a neutral arbitrator so that the parties may proceed in submitting each of these issues to the arbitral panel. Under the terms of the parties' arbitration agreement and as described above, after each side appoints one of the three arbitrators on the panel, those party-appointed arbitrators have an additional thirty days to appoint the neutral umpire. Addendum at § 6. In the event that the party-appointed arbitrators failed to select a neutral umpire before the deadline, the arbitration clause allowed either party to make an application to this Court to appoint the neutral umpire.

■■■ Here, the parties each appointed their respective arbitrators in October and November 2011, and in February 2012, petitioner and respondents each submitted to the party-appointed arbitrators a list of candidates to fill the neutral umpire position. By the time that National Union filed the instant petition in June 2012, no neutral umpire had been selected. Under the plain terms of the arbitration agreement, then, because far more than thirty days had elapsed between the selection of the party-appointed arbitrators and National Union's petition (and even after the submission of candidates in February 2012), the Court had the authority to appoint a neutral umpire upon National Union's petition requesting that it do so.

Respondents suggested that the parties had informally agreed upon a modified procedure by which the party-appointed arbitrators would select a neutral umpire, but that National Union had reneged on this agreement and chose to file the instant petition instead. Thus, respondents argued that the Court should require the parties to proceed according to that alternative procedure.[1] National Union contested the notion that the parties ever reached an agreement to modify the process. Yet the Court found that this dispute is largely irrelevant: in a situation such as this one, courts must "give effect to the contractual rights and expectations of the parties." *Stolt–Nielsen*, 130 S.Ct. at 1773–74. Thus, where the parties' agreement is clear as to what action the Court should take upon receiving a petition to appoint an arbitrator, the Court must do as the contract requires. Accordingly, the Court granted National Union's petition in its January 11, 2013 Order.

In selecting a neutral umpire, the Court reviewed both the qualifications required in the parties' agreement, as well as the qualifications of the candidates provided by the parties. The Payment Agreement specified that the arbitrators

> must be executive officers or former executive officers of property or casualty insurance or reinsurance companies or insurance brokerage companies, or risk management officials in an industry similar to [respondents'], domiciled in the United States of America [and] not under the control of either party to this agreement.

Payment Agreement at 8. Moreover, "[u]nder any model of alternative dispute resolution, it is axiomatic that the third party must be impartial ... [b]ecause the umpire in a tri-partite arbitration occupies a

---

1. Specifically, respondents claimed that the parties agreed through their arbitrators in February 2012 that each party-appointed arbitrator would review the other party's list of candidates through the use of a mutually agreed upon disclosure questionnaire, strike all but one name from each list, and finalize the selection between the final two candidates through a random process.

position analogous to a judge." *In re Travelers Indemnity Co.*, No. 04–MC–196, 2004 WL 2297860, at *3 (D.Conn. Oct. 8, 2004).

Based on these considerations, the Court in its January 25, 2013 Order selected Kevin Bruce Martin, Esq., as neutral umpire, and Mr. Martin soon thereafter accepted his appointment. Mr. Martin has more than sufficient experience in the insurance industry to meet the requirements of the parties' agreement, and, although he has no insurance arbitration experience, Mr. Martin has legal experience at both defense- and plaintiff-side firms, as well as government experience, suggesting a broad base of knowledge on which he may draw as the umpire in this case. *See* Hart Decl. Ex. J. Furthermore, Mr. Martin has no prior involvement with either the party-appointed arbitrators in this case or the parties themselves, *see id.*, so there can be no claim to a lack of impartiality in his management of this arbitration.

In sum, the Court hereby confirms its January 11, 2013 Order granting National Union's petition for the appointment of a neutral umpire and compelling respondents to arbitrate the issue of the Payment Agreement's enforceability and their California claims, as well as its January 25, 2013 Order appointing Mr. Martin as neutral umpire. The Clerk of the Court is hereby directed to enter final judgment and close this case.

SO ORDERED.