================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 8
In the Matter of Monarch
Consulting, Inc., et al.,
            Respondents,
        v.
National Union Fire Insurance
Company of Pittsburgh, PA,
            Appellant.
----------------------------------
In the Matter of National Union
Fire Insurance Company of
Pittsburgh, PA,
            Appellant,
        v.
Priority Business Services, Inc.,
formerly known as Inland Valley
Staffing Services, &c.,
            Respondent.
----------------------------------
In the Matter of National Union
Fire Insurance Company of
Pittsburgh, PA,
            Appellant,
        v.
Source One Staffing, LLC.,
            Respondent.

        Peter D. Keisler, for appellant.
        Jeffrey E. Glen, for respondents.
        United Policyholders; Dave Jones, amici curiae.

STEIN, J.:

        In order to resolve whether the parties' disputes

pertaining to certain workers' compensation insurance Payment

Agreements should be submitted to arbitration, we must make a

threshold determination of whether the McCarran-Ferguson Act (15

USC § 1011 et seq.) precludes application of the Federal

- 1 -

Arbitration Act (9 USC § 1 et seq. [FAA]) in relation to California Insurance Code § 11658. We conclude that, because application of the FAA does not "invalidate, impair, or supersede" (15 USC § 1012 [b]) section 11658, the McCarran-Ferguson Act is not implicated, and the FAA applies to the parties' Payment Agreements. Further, under FAA rules of severability, the question of the enforceability of the Payment Agreements and the arbitration clauses contained therein should be submitted to arbitration. We, therefore, reverse the Appellate Division order.

## I.

Three statutes are at the crux of this dispute -- the FAA, the McCarran-Ferguson Act, and California Insurance Code § 11658.

### The Federal Arbitration Act

The FAA was enacted by Congress "in response to widespread judicial hostility to arbitration" (American Express Co. v Italian Colors Restaurant, 570 US ___, ___, 133 S Ct 2304, 2308-2309 [2013]), and it aims to "ensure judicial enforcement of privately made agreements to arbitrate" (Dean Witter Reynolds, Inc. v Byrd, 470 US 213, 219 [1985]). Under the FAA, an arbitration provision contained in any contract involved in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract" (9 USC § 2). "This text

reflects the overarching principle that arbitration is a matter of contract" and, "consistent with that text, courts must 'rigorously enforce' arbitration agreements according to their terms" (American Express Co., 570 US at ___, 133 S Ct at 2309, quoting Dean Witter Reynolds Inc., 470 US at 221; see Rent-A-Center, West, Inc. v Jackson, 561 US 63, 67 [2010]). Typically, "the FAA pre[e]mpts state laws [that] 'require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration'" (Volt Information Sciences, Inc. v Board of Trustees of Leland Stanford Jr. Univ., 489 US 468, 478-479 [1989], quoting Southland Corp. v Keating, 465 US 1, 10 [1984]; see Preston v Ferrer, 552 US 346, 349-350 [2008]; Allied-Bruce Terminix Cos. v Dobson, 513 US 265, 272 [1995]).

### The McCarran-Ferguson Act

In certain circumstances, however, the McCarran-Ferguson Act exempts state laws from FAA preemption (see 15 USC § 1012 [b]; see generally CompuCredit Corp. v Greenwood, 565 US ___, ___, 132 S Ct 665, 669 [2012]). In 1944, the United States Supreme Court held that the federal government has the power, under the Commerce Clause, to regulate the insurance industry (see United States v South-Eastern Underwriters Assn., 322 US 533, 553 [1944]). Prompted by concern that the Supreme Court's ruling in South-Eastern Underwriters would interfere with state regulation of the business of insurance, Congress enacted

the McCarran-Ferguson Act to limit congressional preemption in that arena (see Humana Inc. v Forsyth, 525 US 299, 306 [1999]; Department of Treasury v Fabe, 508 US 491, 500 [1993]).  The McCarran-Ferguson Act declared that "the continued regulation and taxation by the several States of the business of insurance is in the public interest, and . . . silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States" (15 USC § 1011).  Thus, under the McCarran-Ferguson Act, "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance" (15 USC § 1012 [b]).  Stated otherwise, "when Congress enacts a law specifically relating to the business of insurance, that law controls," but the McCarran-Ferguson Act precludes application of -- or, in other words, reverse preempts -- a federal law in the face of a state law regulating the business of insurance where "the federal measure does not 'specifically relat[e] to the business of insurance,' and would 'invalidate, impair, or supersede' the State's law" (Humana Inc., 525 US at 306, 307, quoting Department of Treasury, 508 US at 501; see 15 USC § 1012 [b]).

### California Insurance Code § 11658

California law requires most employers to maintain workers' compensation insurance (see Cal Lab Code § 3700).  The

insurers that provide workers' compensation coverage to employers are regulated by the California Department of Insurance (the Department), its Commissioner, and the Workers' Compensation Insurance Rating Bureau of California (WCIRB) (see Cal Ins Code §§ 11750.3, 11751, 12921).  The WCIRB, among other things, provides statistics and rating information, formulates rules and regulations in connection with insurance rates, and "examine[s] policies, daily reports, endorsements or other evidences of insurance for the purpose of ascertaining whether they comply with the provisions of law and . . .  make[s] reasonable rules governing their submission" (Cal Ins Code § 11750.3 [e]; see Cal Ins Code § 11750.3 [a] - [d]).

Of particular relevance here, under California Insurance Code § 11658 (a),

> "[a] workers' compensation insurance policy or endorsement shall not be issued by an insurer to any person in [California] unless the insurer files a copy of the form or endorsement with the rating organization [WCIRB] . . . and 30 days have expired from the date the form or endorsement is received by the commissioner from the rating organization without notice from the commissioner."

In other words, workers' compensation insurers must file copies of their policies, endorsements, and forms with the WCIRB prior to issuing the policies; after performing an initial review, the WCIRB sends the policies to the Department for the Commissioner's review (see Cal Ins Code § 11750.3 [e]; Cal Code Regs, tit 10 §§ 2218, 2509.30; see also Cal Ins Code § 11735).  If, within 30

days, the Commissioner rejects a policy, form, or endorsement as failing to comply with the requirements of the Insurance Law, "it is unlawful for the insurer to issue any policy or endorsement in that form" (Cal Ins Code § 11658 [b]).  California regulations also provide that "[n]o collateral agreements modifying the obligation of either the insured or the insurer shall be made unless attached to and made a part of the policy" (Cal Code Regs, tit 10 § 2268).

Sometime before 2011, the Department became aware that workers' compensation insurers were entering into agreements with their insureds after the initial policy agreements, and that these subsequent agreements were not being filed with the WCIRB or the Department.  As reflected in a February 2011 letter written by a Department staff attorney to the president of the WCIRB, the Department took the position that these agreements were required by law to be filed with the State.  The Department also expressed its view that arbitration provisions contained in unfiled agreements may be considered unenforceable absent proof that the insured expressly agreed to arbitration when it initially entered into the policy agreement.

In apparent accordance with that view, in 2011, the California Legislature enacted California Insurance Code § 11658.5 (see Stats 2011, ch 566 [S.B.684], § 2).  That statute provides that arbitration provisions in workers' compensation policies or endorsements must be disclosed to each potential

insured contemporaneously with any quote for insurance coverage, together with a notice that choice of law or venue and forum-selection clauses in the policies may dictate a jurisdiction other than California, and that such terms are negotiable (see Cal Ins Code § 11658.5 [a] [1]).  If the insurer fails to comply with the disclosure requirements, the remedy is "a default to California as the choice of law and forum for resolution of disputes arising in California" (Cal Ins Code § 11658.5 [c]).  Critically, however, this section applies only to insurance policies "issued or renewed on or after July 1, 2012" (Cal Ins Code § 11658.5 [e]).  Prior to the enactment of section 11658.5, and during all times relevant to this appeal, the California Insurance Code and regulations were silent with respect to arbitration provisions in workers' compensation insurance policies and endorsements.

## II.

Turning to the facts of the appeal before us, National Union Fire Insurance Company of Pittsburgh, Pennsylvania, is an insurance company licensed in Pennsylvania, with its principal place of business in New York.  At various times between 2003 and 2010, National Union issued workers' compensation policies to three different California-based employers -- Monarch Consulting, Inc.,[1] Priority Business Services, Inc., and Source One Staffing,

---

[1]  Monarch Consulting Inc., as referenced herein, includes Elite Management, Inc., Brentwood Television Funnies, Inc.,

LLC.  After the execution of the policies -- which were filed with the WCIRB and the Commissioner of Insurance without objection -- National Union and the insureds, respectively, entered into various "Payment Agreements."  In accordance with the Agreements, National Union would extend credit to the insureds by deferring payments due under the policies in return for the provision of collateral on behalf of the insureds.  The Payment Agreements set forth the particulars of that arrangement and what would occur in the event of a default.  National Union concedes that these Payment Agreements were never filed with the State of California.  Nevertheless, the parties operated under the Agreements for several years.

Central to this dispute, the Payment Agreements contained arbitration clauses requiring that disputes arising out of the Agreements, if not resolved internally, be submitted to arbitration before a panel of three arbitrators with certain qualifications and experience in the insurance industry. Significantly, the parties agreed that the arbitrators would "have exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability."  The Payment Agreements and Addenda required that court proceedings concerning

---

Professional Employer Options, Inc., Recurrent Software Solutions, Ahill, Inc., The Accounting Group, LLC, and PES Payroll, IA Inc.

arbitration be commenced in New York.[2]

By early 2011, disputes arose between National Union and each of the insureds under the Payment Agreements. Ultimately, three separate proceedings were initiated in Supreme Court, involving a petition or cross petition by National Union to compel arbitration in each case, and a petition by Monarch Consulting to stay arbitration. In the Monarch Consulting and Priority Business proceedings, Supreme Court granted National Union's petitions to compel arbitration and denied Monarch Consulting's petition to stay arbitration. In the Source One matter, Supreme Court denied National Union's petition to compel arbitration, and held that the Payment Agreements were unenforceable.

National Union, Monarch Consulting, and Priority Business appealed their respective adverse orders. Consolidating the appeals, the Appellate Division, with two Justices dissenting, reversed the orders compelling Monarch Consulting and Priority Business to arbitrate, and affirmed the order denying arbitration in the Source One matter (123 AD3d 51, 54 [1st Dept 2014]). The Appellate Division majority determined that, under California law, National Union was required to file the Payment Agreements with the State and that the appropriate penalty for its failure to do so was to decline to enforce the arbitration

---

[2] No party to this appeal raises any challenge to the jurisdiction of New York courts.

provisions.  In the majority's view, this result did not
contravene the FAA because the McCarran-Ferguson Act precluded
its application inasmuch as requiring arbitration would impair
and undermine the goals of California Insurance Code § 11658.

The dissenting Justices would have compelled
arbitration in each case.  The dissent posited that the
McCarran-Ferguson Act did not reverse preempt the FAA because the
California Insurance Code did not regulate the use of arbitration
clauses in workers' compensation insurance policies and
endorsements and, consequently, application of the FAA would not
"impair" California law (id. at 79 [Gische, J. dissenting].  In
addition, the dissent would have held that, under the FAA, the
arbitrators, not the court, should determine whether the Payment
Agreements were required to be filed -- and any consequences for
National Union's failure to do so -- because the insureds
challenged the arbitration clauses on a ground that would
invalidate the Payment Agreements in their entirety.

National Union now appeals to this Court as of right
(see CPLR 5601 [a]).  Echoing the views of the dissent below,
National Union argues that the McCarran-Ferguson Act does not
reverse preempt the FAA -- which National Union contends would
mandate arbitration -- because application of the FAA does not
interfere with, or undermine, California Insurance Code § 11658.
Assuming we agree, National Union further asserts that the
insureds' challenge to the enforceability of the Payment

Agreements is premised upon the validity of those Agreements as a whole and, therefore, must be determined by arbitration.

In response, the insureds -- joined by the California Commissioner of Insurance as amicus curiae -- argue that the Payment Agreements and the arbitration clauses are illegal and unenforceable because National Union failed to file them in accordance with California Insurance Code § 11658.  The insureds contend that compelling arbitration pursuant to an arbitration clause in an unfiled insurance agreement would undermine the California filing statute and, consequently, the McCarran-Ferguson Act reverse preempts the FAA.  Thus, the insureds argue, the courts may decline to enforce the arbitration provisions in the Payment Agreements.  The insureds also claim that, even if the FAA applies, the question of whether the arbitration provisions are enforceable is one for the courts, not arbitrators, to decide.

III.

To resolve the parties' contentions, we must first determine whether the McCarran-Ferguson Act reverse preempts the FAA.  The relevant analysis is a three-part test, pursuant to which the McCarran-Ferguson Act applies if: (1) the federal statute in question does not specifically relate to insurance; (2) the state law at issue was enacted to regulate the business of insurance; and (3) the federal statute at issue would invalidate, impair, or supersede the state law (see 15 USC § 1012

[b]; <u>Humana Inc.</u>, 525 US at 307).  Here, the first two prongs of this test are satisfied -- namely, the FAA does not specifically relate to insurance (see <u>Kong v Allied Professional Ins. Co.</u>, 750 F3d 1295, 1303 [11th Cir 2014]; <u>Munich American Reins. Co. v Crawford</u>, 141 F3d 585, 590 [5th Cir 1998]; <u>Stephens v American Intl. Ins. Co.</u>, 66 F3d 41, 44 [2d Cir 1995]) and California Insurance Code § 11658 was enacted to regulate the business of insurance (see <u>generally</u> <u>Rush Prudential HMO, Inc. v Moran</u>, 536 US 355, 373 [2002]; <u>Union Labor Life Ins. Co. v Pireno</u>, 458 US 119, 129 [1982]).  Thus, whether the McCarran-Ferguson Act applies turns on whether application of the FAA -- assuming that it would mandate arbitration here -- would "invalidate, impair, or supersede" California Insurance Code § 11658 (15 USC § 1012 [b]).

As the Supreme Court explained in <u>Humana Inc.</u>, "[t]he term 'invalidate' ordinarily means 'to render ineffective, generally without providing a replacement rule or law'" and "the term 'supersede' ordinarily means 'to displace (and thus render ineffective) while providing a substitute rule'" (525 US at 307 [internal citations omitted]).  The Supreme Court has interpreted the term "impair" more broadly to mean "'[t]o weaken, to make worse, to lessen in power, diminish, or relax, or otherwise affect in an injurious manner'" (<u>id.</u> at 309-310, quoting Black's Law Dictionary 752 [6th ed. 1990]).  Although the term "impair" broadens the reach of the McCarran-Ferguson Act beyond federal

statutes that directly conflict with a state law regulating insurance, "when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application" (id. at 310).

Applying the above definitions here, the McCarran-Ferguson Act does not reverse preempt the FAA with respect to California Insurance Code § 11658.  This is so because neither section 11658 -- nor any other California law which has been brought to our attention -- would be invalidated, superceded or impaired by application of the FAA inasmuch as California law did not, at the relevant times, prohibit, limit, or regulate the use or form of arbitration clauses in insurance contracts.  The clearest example of a scenario in which reverse preemption occurs is where state law expressly prohibits arbitration of insurance related disputes (see e.g. McKnight v Chicago Title Ins. Co., Inc., 358 F3d 854, 857-589 [11th Cir 2004]; Standard Sec. Life Ins. Co. of New York v West, 267 F3d 821, 823 [8th Cir 2001]; Mutual Reins. Bureau v Great Plains Mut. Ins. Co., Inc., 969 F2d 931, 935 [10th Cir 1992]; see also Stephens, 66 F3d at 42).  As noted previously, at the times in question here, California law did not -- and still does not -- prohibit arbitration in the insurance context.  Nor have the parties alerted us to any California statutes or regulations granting that state's courts or administrative agencies exclusive jurisdiction over insurance

disputes (compare State Dept. of Transp. v James River Ins. Co.,
176 Wash 2d 390, 400, 292 P3d 118, 123 [2013]; Washburn v
Corcoran, 643 F Supp 554, 556 [SD NY 1986]).

As the insureds point out, California courts have
consistently found the FAA to be reverse preempted by the
McCarran-Ferguson Act with respect to arbitration agreements in
health care service plans (see Zolezzi v PacifiCare of
California, 105 Cal App 4th 573, 588 n 11 [Cal Ct App 2003];
Imbler v PacifiCare of California, Inc., 103 Cal App 4th 567, 573
[Cal Ct App 2002]; Smith v PacifiCare Behavioral Health of
California, Inc., 93 Cal App 4th 139, 143 [Cal Ct App 2001]).
However, the result in those cases was compelled by the existence
of a California statute mandating that certain disclosures be
contained in arbitration provisions in health care plans (see Cal
Health & Saf Code § 1363.1).  Thus, in those cases, application
of the FAA would have "absolutely preclude[d]" enforcement of the
statute "to regulate the wording and organization of . . .
arbitration clauses" (Imbler, 103 Cal App 4th at 573; see Cal
Health & Saf. Code § 1363.1; Smith, 93 Cal App 4th at 143).  By
contrast, in the workers' compensation insurance context,
California insurance law did not mandate a specific form or
content of arbitration clauses, or otherwise restrict their use.[3]

Moreover, although California Insurance Code § 11658

---

[3]  We express no opinion as to whether a different result
would be compelled in a case implicating the later-enacted
California Insurance Code § 11658.5.

may have required the filing of the Payment Agreements, the purpose of the filing rule is to ensure that the insurance documents comply with the Insurance Code and accompanying regulations -- none of which pertained to the use or form of arbitration provisions.  Neither the goal of the statute nor its administrative scheme is undermined by applying the FAA.  Should the FAA mandate arbitration, the arbitrators can competently determine the question of whether the Payment Agreements, generally, and the arbitration provisions, specifically, are enforceable under California law despite the fact that they were not filed with the state.

We disagree with the insureds' assertion that application of the FAA would undercut the Department's authority to review insurance agreements and incentivize violations of the filing requirement.  Significantly, the determination of whether California Insurance Code § 11658 applies to the Payment Agreements -- and, if so, the consequences of the failure to file them -- will be made pursuant to California law regardless of whether arbitration is compelled.  Further, whether this issue is resolved by a court or by arbitrators, the question of whether the failure to file invalidates the Payment Agreements will not be determined by the Department, itself.  However, should it be so inclined, the Department may pursue an enforcement action against National Union.  Thus, permitting arbitration will not undermine the authority of the WCIRB or the Commissioner (cf.

<u>Preston</u>, 552 US at 358 [rejecting argument that arbitration of private dispute would undermine role of agency in enforcing statute]).[4]  Rather, the insureds' contention that permitting arbitration would somehow frustrate the filing requirement or allow National Union to escape the consequences of its failure to comply with section 11658 is based on nothing more than their apparent hostility to arbitration.

Our conclusion that the McCarran-Ferguson Act does not reverse preempt the FAA is supported by the weight of the relevant precedent.  At least two courts in California have held that the McCarran-Ferguson Act is not triggered by the interaction between the FAA and California Insurance Code § 11658 with respect to arbitration agreements in unfiled insurance documents because the California Insurance Code "does not address the topic of arbitration or provide a procedural framework for resolution of disputes" (<u>Grove Lumber & Bldg. Supply, Inc. v Argonaut Ins. Co.</u>, 2008 WL 2705169, *7 [CD Cal July 7, 2008]; <u>see Adir Intl. LLC v Travelers Indemnity Co. of Connecticut</u>, No.

_____

   [4]  Indeed, the California Department of Insurance instituted an enforcement action against Zurich American Insurance Company and Zurich American Insurance Company of Illinois alleging similar violations of California Insurance Code § 11658 by Zurich's failure to file certain "Deductible Agreements."  That action was settled in 2013 with no penalties or admissions of wrongdoing.  Zurich agreed to submit future Deductible Agreements to the Department of Insurance and allow insureds a one-time opt out of the arbitration provisions in the Agreements for certain disputes.  The Settlement Agreement did not, however, prohibit the use of arbitration clauses in filed agreements in the future.

BC575513 [Cal Super. Ct, August, 21, 2015]).  Likewise, the District Court of the Southern District of New York has held that the McCarran-Ferguson Act does not reverse preempt the FAA in relation to California Insurance Code § 11658 because the state law and the FAA "address completely different matters" (Matter of Arbitration Between Nat. Union Fire Ins. Co. of Pittsburgh, P.A. v Personnel Plus, Inc., 954 F Supp 2d 239, 248 [SD NY 2013]). The Eighth Circuit reached a similar conclusion in a dispute involving a filing requirement contained in Texas insurance laws, holding that the enforceability of the unfiled agreement was a question of the underlying merits and the Texas insurance laws were not impaired by enforcement of the agreement to arbitrate (see St. Paul Fire and Marine Ins. Co. v Courtney Enterprises, Inc., 270 F3d 621, 625 [8th Cir 2001]; see also American Heritage Life Ins. Co. v Orr, 294 F3d 702, 709 [5th Cir 2002]).  We find these cases to be persuasive, and the insureds' reliance to the contrary on the unpublished decision in Ceradyne, Inc. v Argonaut Ins. Co. to be unavailing in light of that court's focus on the merits of the parties' substantive arguments and its failure to address the applicability of the McCarran-Ferguson Act (2009 WL 1526071, *11 [Cal Ct App June 2, 2009]; see also American Zurich Ins. Co. v Country Villa Serv. Corp., 2015 WL 4163008, *16 [CD Cal July 9, 2015]).

Accordingly, we hold that the McCarran-Ferguson Act does not prevent application of the FAA to the Payment Agreements

at issue in this case.

IV.

We must next address whether, under the FAA, the enforceability of the Payment Agreements and their arbitration clauses is a question that should be resolved by arbitrators, or by the court.

"'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit'" (AT&T Technologies, Inc. v Communications Workers, 475 US 643, 648 [1986], quoting United Steelworkers v Warrior & Gulf Nav. Co., 363 US 574, 582 [1960]; see First Options of Chicago, Inc. v Kaplan, 514 US 938, 943 [1995]).  As the United States Supreme Court has stated, "[c]hallenges to the validity of arbitration agreements . . . can be divided into two types," namely, "challenges specifically [to] the validity of the agreement to arbitrate" and "challenges [to] the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid" (Buckeye Check Cashing, Inc. v Cardegna, 546 US 440, 444 [2006]). "[A]ttacks on the validity of the contract, as distinct from attacks on the validity of the arbitration clause[,] itself, are to be resolved 'by the arbitrator in the first instance, not by a federal or state court'" (Nitro-Lift Technologies, L.L.C. v

*Howard*, 568 US ___, ___, 133 S Ct 500, 503 [2012], quoting *Preston*, 552 US at 349; see *Buckeye Check Cashing, Inc.*, 546 US at 444; *Prima Paint Corp. v Flood & Conklin Mfg. Co.*, 388 US 395, 403-404 [1967]).

The Supreme Court has also held that arbitration agreements must be enforced according to their terms, and that "parties can agree to arbitrate 'gateway' questions of 'arbitrability'" (*Rent-A-Center, West, Inc.*, 561 US at 68-69; see *Nitro-Lift Technologies, L.L.C.*, 568 US at ___, 133 S Ct at 503; *Buckeye Check Cashing, Inc.*, 546 US at 445). Such "delegation clauses" are enforceable where "there is 'clea[r] and unmistakabl[e]' evidence" that the parties intended to arbitrate arbitrability issues (*First Options of Chicago, Inc.*, 514 US at 944, quoting *AT&T Technologies, Inc.*, 475 US at 649). "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts" (*First Options of Chicago, Inc.*, 514 US at 944).

Further, "courts treat an arbitration clause as severable from the contract in which it appears and enforce it according to its terms unless the party resisting arbitration specifically challenges the enforceability of the arbitration clause itself" (*Granite Rock Co. v Teamsters*, 561 US 287, 301 [2010]; see *Nitro-Lift Technologies, L.L.C.*, 568 US at ___, 133 S Ct at 503; *Rent-A-Center, West, Inc.*, 561 US at 71; *Buckeye Check*

Cashing, Inc., 546 US at 445).  This rule of severability extends to delegation clauses, which are severable from larger arbitration provisions (see Rent-A-Center, West, Inc., 561 US at 71-72; Parnell v CashCall, Inc., 804 F3d 1142, 1146 [11th Cir 2015]; Brennan v Opus Bank, 796 F3d 1125, 1133 [9th Cir 2015]). Thus, where a contract contains a valid delegation to the arbitrator of the power to determine arbitrability, such a clause will be enforced absent a specific challenge to the delegation clause by the party resisting arbitration (see Rent-A-Center, West, Inc., 561 US at 71-72).

Here, the crux of the insureds' challenge to the arbitration provisions is that National Union's failure to file the Payment Agreements in accordance with California Insurance Code § 11658 renders unenforceable the Payment Agreements and, only by extension, the arbitration provisions.  National Union argues that this is, at its core, a challenge to the Payment Agreements, not to the arbitration provisions, and, therefore, is a matter for the arbitrator to decide.  Regardless of whether the insureds sufficiently directed their attack to the arbitration provisions, a review of the record reveals that they did not specifically direct any challenge to the delegation clauses empowering the arbitrators to determine gateway questions of arbitrability (see Rent-A-Center, West, Inc., 561 US at 71-72). Those delegation provisions, which state that the arbitrators "have exclusive jurisdiction over the entire matter in dispute,

including any question as to its arbitrability," are valid because the parties "clearly and unmistakably" agreed to arbitrate arbitrability (AT&T Technologies, Inc., 475 US at 649; see First Options of Chicago, Inc., 514 US at 944; Malone v Superior Ct., 226 Cal App 4th 1551, 1560 [Cal Ct App 2014]; Gilbert St. Developers, LLC v La Quinta Homes, LLC, 174 Cal App 4th 1185, 1192 [Cal Ct App 2009]).  As the delegation clauses are severable from the remainder of the agreements to arbitrate, we must enforce them according to their terms and, under these circumstances, the question of arbitrability is one for the arbitrators (see Rent-A-Center, West, Inc., 561 US at 71-72).

IV.

In sum, we hold that the FAA applies to the Payment Agreements because it does not "invalidate, impair, or supersede" the California Insurance Code or any insurance regulations and, consequently, the McCarran-Ferguson Act is not triggered (15 USC § 1012 [b]).  Further, because the parties clearly and unmistakably delegated the question of arbitrability and enforceability of the arbitration clauses to the arbitrators -- in provisions that were not specifically challenged by the insureds -- the FAA mandates that the arbitration provisions be enforced as written.  We, therefore, express no view on whether National Union's failure to file the Payment Agreements rendered the arbitration clauses unenforceable, because that question should be determined by the arbitrators pursuant to the FAA and

the parties' agreements to arbitrate arbitrability (see AT&T Technologies, Inc., 475 US at 649).

The insureds' remaining arguments are unpersuasive. Accordingly, the order of the Appellate Division should be reversed, with costs.  In the first captioned proceeding, Monarch Consulting's petition to stay arbitration should be denied and National Union's cross petition to compel arbitration should be granted.  In the second and third captioned proceedings, National Union's petitions to compel arbitration should be granted.

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

Order reversed, with costs, and (1) in Matter of Monarch Consulting, Inc. v National Union Fire Insurance Company of Pittsburgh, PA, petition to stay arbitration denied and cross petition to compel arbitration granted; (2) in Matter of National Union Fire Insurance Company of Pittsburgh, PA v Priority Business Services, Inc., petition to compel arbitration granted; and (3) in Matter of National Union Fire Insurance Company of Pittsburgh, PA v Source One Staffing, LLC, petition to compel arbitration granted.  Opinion by Judge Stein.  Judges Pigott, Rivera, Abdus-Salaam and Fahey concur.  Chief Judge DiFiore and Judge Garcia took no part.


Decided February 18, 2016