[814 NYS2d 38]

Diana Locke, Appellant, v Sherrell J. Aston, M.D., et al., Respondents.

First Department, April 18, 2006

## APPEARANCES OF COUNSEL

*Epstein Becker & Green, P.C.*, New York City (*Donna Marie Werner* of counsel), for appellant.

*Stillman & Friedman, P.C.*, New York City (*John B. Harris* of counsel), for respondents.

## OPINION OF THE COURT

SULLIVAN, J.

This case presents the novel question of whether California law, which prohibits the taping of a telephone conversation without both parties' knowledge and consent, or New York law, which allows such taping if one party consents, applies to a New York resident's claim for damages for the surreptitious taping of such conversations by a California resident calling him in New York from California.

Plaintiff Diana Locke, a California resident, and defendant Dr. Sherrell J. Aston, a plastic surgeon and New York resident, agreed to collaborate on a book about plastic surgery. The book was never published, and Locke commenced this lawsuit in Supreme Court, New York County, for breach of contract and defamation. After the dismissal of both claims and the denial of renewal/reargument, this Court, in a November 2003 decision (1 AD3d 160 [2003]), modified the determination to reinstate the breach of contract claim.

Thereafter, during a mediation session in January 2004, Locke's counsel revealed that Locke had tape-recorded her telephone conversations with Aston over the two-year period of the collaboration. On March 9, 2004, Aston's counsel received six audiotapes containing numerous telephone conversations. His original counterclaim alleging breach of contract having been dismissed on February 26, 2004 with leave to replead, Aston, within the time allowed, served an amended answer pleading the newly discovered claim for surreptitious taping under the California Invasion of Privacy Act (Cal Penal Code §§ 630-637.9). Under section 632 of the act, the taping of confidential telephone conversations is prohibited unless all parties to the conversation have consented. The counterclaim asserted that Locke taped the conversations in California, where she resides,

and that Aston was neither aware of, nor consented to, the taping of these private calls.

When Locke rejected the amended answer and counterclaims as improperly outside the scope of the leave to replead, Aston moved for leave to file an amended counterclaim asserting claims under California Penal Code §§ 632 and 637.2. Rejecting the arguments that the California statute was for the protection of California residents only[1] and applied only to communications that the parties intended to be "secret," Supreme Court granted the motion. The court also rejected the assertion that the counterclaim did not adequately allege that Aston was unaware of the surreptitious taping. This appeal followed. We reverse.

Section 632 (a) of the California Penal Code makes it unlawful for any person "intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device . . . [to record] the confidential communication." Section 637.2 of the Code provides a civil remedy of, inter alia, the greater of $5,000 or three times the amount of damages, if any, to "[a]ny person who has been injured by a violation of this chapter . . . against the person who committed the violation." Under New York law, the recording of a telephone conversation "by a person other than a sender or receiver thereof, without the consent of either the sender or receiver" (Penal Law § 250.00 [1]) is forbidden (Penal Law § 250.05). Thus, in New York, as in a majority of the states and under federal law, a telephone conversation may be taped as long as one party to the conversation consents to the taping (Carol M. Bast, *What's Bugging You? Inconsistencies and Irrationalities of the Law of Eavesdropping*, 47 DePaul L Rev 837 [1998]; Nathan Siegel, Panel One Commentary, *Newsgathering and Privacy Rights*, 1999 Ann Surv Am Law 207, 210-211; *see e.g.* 18 USC § 2511 [2] [d]; Alaska Stat § 42.20.310; Ohio Rev Code Ann § 2933.52; Oregon Rev Stat § 165.540).

Locke argues that the California statute was never intended to apply to the conduct complained of here or to protect a non-Californian such as Aston not present in California at the time of the calls. Thus, before reaching the conflict of laws question, we are required to determine whether California law would offer a civil remedy to Aston.

---

1. Locke submitted an affidavit in opposition to the motion for leave to amend, stating that each of the telephone numbers with which she was connected during her conversations with Aston "was a number with an area code located in New York."

"The starting point for . . . interpretation of a statute is always its language" (*Community for Creative Non-Violence v Reid*, 490 US 730, 739 [1989]). As the Court of Appeals has noted, "The governing rule of statutory construction is that courts are obliged to interpret a statute to effectuate the intent of the Legislature, and when the statutory 'language is clear and unambiguous, it should be construed so as to give effect to the plain meaning of [the] words' used" (*People v Finnegan*, 85 NY2d 53, 58 [1995], *cert denied* 516 US 919 [1995], quoting *People ex rel. Harris v Sullivan*, 74 NY2d 305, 309 [1989]).

The intent of the California Legislature in enacting section 632 of the California Penal Code can be gleaned from section 630, which states that the statute is intended "to protect the right of privacy of the people of this state." As the California Supreme Court has noted,

> "In enacting this statute, the Legislature declared in broad terms its intent 'to protect the right of privacy of the people of this state' from what it perceived as 'a serious threat to the free exercise of personal liberties [that] cannot be tolerated in a free and civilized society.' (Pen. Code, § 630.) This philosophy appears to lie at the heart of virtually all the decisions construing the Privacy Act" (*Ribas v Clark*, 38 Cal 3d 355, 359, 696 P2d 637, 639-640 [1985]).

Thus, what comes across rather clearly is that California's Legislature intended that sections 632 and 637.2 of its Penal Code apply to conduct encroaching upon the privacy rights of the "people" of California (*see Feldman v Allstate Ins. Co.*, 322 F3d 660, 667 [9th Cir 2003], *cert denied* 540 US 875 [2003] ["The statute thereby embodies a state substantive interest in the privacy of California citizens from exposure of their confidential conversations to third parties"]). It is undisputed that Aston is a resident of New York and that his professional corporation, also a defendant, is domiciled and operates exclusively here. Nor is it disputed that Aston was in New York during each of the subject telephone conversations. Thus, Aston is not within the class of persons intended to be protected by the statute. For this reason, the statute, insofar as it provides a civil remedy, does not apply to the conduct complained of.

Aston attempts to minimize the impact of the clear language as to the intent of California Penal Code §§ 632 and 637.2 by pointing out that section 630 is only the preamble to those sec-

tions. But, as noted, the Supreme Court of California has held that the preamble language is "at the heart" of all the decisions interpreting California's Invasion of Privacy Act (*Ribas v Clark*, 38 Cal 3d at 359, 696 P2d at 640; *see Lederman v Board of Educ. of City of N.Y.*, 276 App Div 527, 530 [1950], *affd* 301 NY 476 [1950] [courts may consider the preamble when interpreting statutory language]).[2] Moreover, "[t]he primary consideration of courts in interpreting a statute is to 'ascertain and give effect to the intention of the Legislature' " (*Riley v County of Broome*, 95 NY2d 455, 463 [2000], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 92 [a], at 177; *People v Fuhrman*, 16 Cal 4th 930, 941, 941 P2d 1189, 1195-1196 [1997]), and there could hardly be a clearer statement of the Legislature's intent than the language of the Invasion of Privacy Act itself.

If Aston's interpretation of the California statute were to prevail, a New York resident not located in California when his conversation was taped, and with no expectation that a California law would protect him when an analogous New York statute does not, would have greater protection than the California resident, located in California, whose conversation is being recorded from outside the state without his/her consent and for whose protection the California statute was enacted.

Even if the California statute provided a civil remedy for the conversations complained of, choice of law principles dictate that New York law, not California law, should apply to the conduct alleged in the counterclaim. Where a conflict of law exists between two states, courts look to the choice of law rules of the forum to determine which state's law applies (*Tanges v Heidelberg N. Am.*, 93 NY2d 48, 54 [1999]). New York, as does California (*see Reich v Purcell*, 67 Cal 2d 551, 555, 432 P2d 727, 730 [1967]), uses an interest analysis to determine "which of two competing jurisdictions has the greater interest in having its law applied in the litigation" (*Ackerman v Price Waterhouse*, 252 AD2d 179, 192 [1998], quoting *Padula v Lilarn Props. Corp.*, 84 NY2d 519, 521 [1994]). An evaluation of the facts relating to the purpose of the particular law in conflict determines the greater interest (*id.*). Under New York's choice of law rules,

---

2. While Locke directs our attention to a subsequently depublished California case that found section 632 inapplicable to the recording, in an office in Georgia, of telephone conversations with customers located in California (*Kearney v Salomon Smith Barney, Inc.*, 117 Cal App 4th 446, 455, 11 Cal Rptr 3d 749, 756 [2004], *review granted and depublished* 14 Cal Rptr 3d 810 [2004]), rule 977 (a) of the California Rules of Court prohibits the citation of unpublished opinions.

where the plaintiff and defendant are domiciled in different states, the applicable law in an action where civil remedies are sought for tortious conduct is that of the situs of the injury (*Stoyanovskiy v Amerada Hess Corp.*, 286 AD2d 727, 728 [2001]; *see* Restatement [Second] of Conflict of Laws § 152, Comment *c* [local law of place where invasion occurred applies; when invasion involves intrusion on plaintiff's solitude, place of invasion is place where plaintiff was at time]).

Thus, assuming a conflict between New York and California law as to Locke's taping of her conversation with Aston, the law of New York, where the alleged injury or damage was sustained, would apply (*Schultz v Boy Scouts of Am.*, 65 NY2d 189, 195 [1985]). In the circumstances, New York is the state with the interest in protecting Aston, its citizen and resident. California, on the other hand, by including express language in its statute that it is intended to protect the people of California, has disavowed any such interest. Since under New York law the conduct complained of is not illegal (*see* Penal Law § 250.00 [1]; § 250.05; *People v Lasher*, 58 NY2d 962 [1983]), it does not give rise to a civil claim.

Thus, the motion to amend should have been denied because the counterclaim is without merit as a matter of law (*see Rappaport v VV Publ. Corp.*, 223 AD2d 515, 516 [1996]). In light of this determination, we need not reach Aston's other arguments having to do with the sufficiency under California law of the averments of the amended counterclaim.

Accordingly, the order of the Supreme Court, New York County (Karla Moskowitz, J.), entered October 25, 2004, which granted defendants' motion for leave to serve an amended counterclaim, should be reversed, on the law, without costs or disbursements, and the motion denied.

TOM, J.P., NARDELLI, CATTERSON and MCGUIRE, JJ., concur.

Order, Supreme Court, New York County, entered October 25, 2004, reversed, on the law, without costs or disbursements, and defendants' motion for leave to serve an amended counterclaim denied.