[993 NYS2d 275]

In the Matter of MONARCH CONSULTING, INC., et al., Appellants, v NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Respondent.

In the Matter of NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Respondent, v PRIORITY BUSINESS SERVICES, INC., Formerly Known as INLAND VALLEY STAFFING SERVICES, Appellant.

In the Matter of NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Appellant, v SOURCE ONE STAFFING, LLC, Respondent.

First Department, September 11, 2014

52

---

**APPEARANCES OF COUNSEL**

*Bond, Schoeneck & King, PLLC*, Syracuse (*Clifford G. Tsan* of counsel), and *Roxborough, Pomerance, Nye & Adreani, LLP*, Woodland Hills, CA (*Nicholas P. Roxborough* of the bar of the State of California, admitted pro hac vice, of counsel), for Monarch Consulting, Inc. and others, appellants.

*Anderson Kill & Olick, P.C.*, New York City (*Jeffrey E. Glen* and *Edward J. Stein* of counsel), for Priority Business Services, Inc., appellant.

*Sidley Austin LLP*, New York City (*Nicholas P. Crowell, Andrew W. Stern* and *Gazeena K. Soni* of counsel), for National Union Fire Insurance Company of Pittsburgh, PA., appellant/ respondent.

*Anderson Kill & Olick, P.C.*, New York City (*Rene F. Hertzog* of counsel), for Source One Staffing, LLC, respondent.

**OPINION OF THE COURT**

MOSKOWITZ, J.

In this appeal, we are called on to decide whether three insureds are compelled to arbitrate their disputes with their workers' compensation insurance carrier even though the carrier failed to file the arbitration agreements, contained in side agreements to the insurance policies, with the California Department of Insurance as California law requires.

██ We find that, in light of the strong policy under California law of regulating insurance carriers and their agreements with their insureds, the side agreements, along with the arbitration clauses contained in them, are not enforceable because the insurer failed to file them with the Workers' Compensation Insurance Rating Bureau (WCIRB) and the California Department of Insurance (CDI). Thus, the petitions to compel arbitration are dismissed and the cross petitions to stay arbitration are granted.

The Parties

National Union Fire Insurance Company of Pittsburgh, PA. is an insurance company licensed in Pennsylvania with its principal place of business in New York. Source One Staffing,

Monarch Consulting, Inc. and Priority Business Services, Inc. (collectively, the insureds) are all either California companies or have their principal places of business in that state.[1]

The California Statutory Insurance Scheme

California law provides for a mandatory insurance program so that employers can compensate workers injured on the job, and employers must buy workers' compensation insurance as a condition of doing business in California (*see* Cal Lab Code § 3700). The state of California has also created a comprehensive system to regulate the insurance companies that provide workers' compensation insurance to employers. To that end, the California legislature grants broad authority to the California Commissioner of Insurance (the Commissioner) and WCIRB to regulate and oversee the form and substance of all workers' compensation insurance plans, including the rates and practices of all insurance companies in the state. The California Insurance Code provides that the WCIRB was organized, among other purposes, "[t]o provide reliable statistics and rating information with respect to workers' compensation insurance and employer's liability insurance incidental thereto and written in connection therewith" and "[t]o examine policies, daily reports, endorsements or other evidences of insurance for the purpose of ascertaining whether they comply with the provisions of law and to make reasonable rules governing their submission" (Cal Ins Code § 11750.3 [a], [e]).

The law requires workers' compensation carriers, before issuing a workers' compensation insurance policy, to file copies of their insurance policies, endorsements and forms with WCIRB; after a preliminary inspection, the WCIRB then sends the filed documents to the CDI for approval (*see* Cal Ins Code § 11658; *see also* Cal Ins Code §§ 11735, 11750.3; Cal Code Regs [CCR] tit 10, §§ 2218, 2268). The CDI has 30 days in which to reject the filed form or endorsement; should the CDI reject the documents, "it is unlawful for the insurer to issue any policy or endorsement in that form" (Cal Ins Code § 11658 [b]). Thus, two regulatory agencies must review and approve all workers' compensation insurance forms; the Commissioner, however, has the exclusive authority to regulate, accept, and reject workers' compensation insurance plans.

---

1. Monarch Consulting, Inc. is only one of the plaintiffs in its action against National Union; the others are Elite Management, Inc., Brentwood Television Funnies, Inc., Professional Employer Options, Inc., Recurrent Software Solutions, Ahill, Inc., The Accounting Group, LLC, and PES Payroll, IA, Inc. "Monarch" will refer to these parties collectively.

The Policies and the Payment Agreements

As required under the various laws regulating insurance in the state of California, the insureds each secured, from National Union, annual workers' compensation insurance policies, the earliest of which went into effect on October 21, 2003 and the latest of which terminated on October 21, 2010 (collectively, the policies).

After National Union issued the policies, it sent each insured a series of additional agreements and addenda (the payment agreements), governing, among other things, the extension of credit and deferral of certain payment obligations, the timing of those payment obligations, and default and dispute resolution procedures and processes. The payment agreements contained numerous defined terms, including the insureds' "Payment Obligation," defined as "the amounts that [insureds] must pay [National Union] for the insurance and services in accordance with the terms of the Policies, this Agreement, and any similar primary casualty insurance Policies and agreements with [National Union] incurred before the inception date hereof." These amounts included, but were not limited to, "premiums and premium surcharges," "deductible loss reimbursement" and any amount that National Union paid to a claimant on the insureds' behalf.

The payment agreements also provided that, if an insured defaulted under those agreements, National Union could

> "change any or all unexpired Policies under Loss Reimbursement or Deductible plan to Non-Deductible plans for the remaining term of any such Policy, to become effective after ten days written notice to [the insured]. [National Union] will therewith increase the premiums for those Policies in accordance with our applicable rate plan."

The payment agreements contained broad arbitration clauses requiring the arbitration of "[a]ny" disputes concerning an insured's payment obligation as well as "[a]ny other unresolved dispute" arising out of the payment agreements. The payment agreements further provided that any arbitration would be governed by the Federal Arbitration Act (FAA) and that the arbitrators "will have exclusive jurisdiction over the entire matter in dispute, including the question as to its arbitrability" and that "any action or proceeding concerning arbitrability, including motions to compel or to stay arbitration, may be brought only in a court of competent jurisdiction in the City, County, and State of New York."

The insureds do not dispute that they executed each of the payment agreements, including all schedules and addenda. For its part, National Union does not dispute that the payment agreements were not attached to the policies and, in fact, were usually issued months after the policies.

In each of the above-entitled actions, a dispute arose between the insureds and National Union when the insureds defaulted on the payment agreements, and National Union demanded arbitration under those agreements. In each case, the insureds resisted arbitration by challenging, among other things, the payment agreements' arbitration clauses, arguing that they violated California Insurance Code § 11658.

The insureds argued that despite the arbitration clause, the issue was for the courts to decide. Specifically, the insureds asserted that the FAA could not preempt the California Insurance Code for one of two reasons: first, because the challenge is to the arbitration clause itself, rather than to the entire agreement; and, second, because the McCarran-Ferguson Act precludes preemption. In response, National Union argued that neither the payment agreements nor the arbitration clauses constitute policies or endorsements, and thus, there is no requirement that the CDI review them because they are not subject to the same regulation as the policies themselves.

The CDI Directive

On February 14, 2011, the CDI issued a directive to the WCIRB reiterating its position that under "Insurance Code Section 11658, a workers' compensation insurance policy or endorsement shall not be issued by an insurer to any person in this state *unless the insurer files a copy* of the form or endorsement with the rating organization pursuant to subdivision (e) of Section 11750.3." The directive states, "[T]he Insurance Commissioner has prohibited the use of Collateral Agreements, which is synonymous with the term 'side-agreement,' concerning workers' compensation insurance unless they are attached to the policy." The directive further notes: "The Department is particularly concerned with arbitration provisions contained in unattached collateral agreements and considers such terms unenforceable unless the insurer can demonstrate that the arbitration agreement was expressly agreed to by the insured at the time the policy was issued."

Approximately one year later, the CDI began instituting enforcement actions against insurers who failed to heed its February 2011 directive. One action in particular (*Matter of Zurich*

*Am. Ins. Co.*, Cal Ins Commr, file No. DISP-2011-00811 [the *Zurich* action]), involved Zurich American Insurance Company's insurance of six consecutive years of workers' compensation policies and payment agreements to one of its insureds.

By order to show cause, filed on February 27, 2012, the CDI argued in the *Zurich* action that Zurich American should have filed the agreements with California's insurance regulators because the agreements referred to, modified and superseded the underlying policies. The CDI argued further that, because the agreements had not been filed, they were unenforceable, and it sought an order from the Insurance Commissioner to that effect. Zurich American responded that the payment agreements were neither policies nor endorsements; rather, they were "non-policy" financial agreements that in no way modified the insurance policies.

On July 11, 2013, the CDI finalized a settlement with Zurich. The settlement stated that Zurich's payment agreements were to be filed with the CDI and the WCIRB, starting from the date of the settlement forward. For its part, Zurich agreed that, as of the settlement date, it would file the documents and comply with the relevant statutes—namely, California Insurance Code § 11658, and CCR title 10, §§ 2216 and 2268. The CDI settlement also states, "The [California] Department of Insurance further agrees that its rules and requirements regarding Deductible Agreements would be applied evenly to Zurich *and its competitors on a level playing field basis*" (emphasis added).

The Relevant Codes, Statutes and Laws

California Insurance Code § 11658 (a) provides:

> "A workers' compensation insurance policy or endorsement *shall not be issued* by an insurer to any person in this state unless the insurer files a copy of the form or endorsement with the rating organization pursuant to subdivision (e) of Section 11750.3 and 30 days have expired from the date the form or endorsement is received by the commissioner from the rating organization without notice from the commissioner, unless the commissioner gives written approval of the form or endorsement prior to that time" (emphasis added).

CCR title 10, § 2218 elaborates further on the process that must be followed, providing: "(a) All workers' compensation insurance forms must be submitted in duplicate to the [WCIRB] for preliminary inspection. The [WCIRB] shall review such forms and submit them to the Commissioner for final action[;]

(b) Workers' compensation rates shall be filed as provided in s 2509.30, et seq, of this Chapter."

CCR title 10, § 2268 provides:

"No collateral agreements modifying the obligation of either the insured or the insurer shall be made unless attached to and made a part of the policy, provided, however, that if such agreements are attached and in any way restrict or limit the coverage of the policy, they shall conform in all respects with these rules."

CCR title 10, § 2252, in turn, provides that "[l]imitation or restriction of coverage for liability under the [California] workers' compensation laws shall be governed by Sections 2253 to 2268, inclusive."

As to applicable federal law, the McCarran-Ferguson Act (Act of Mar. 9, 1945, ch 20, 59 US Stat 33, codified as amended at 15 USC § 1011 *et seq.*) (McCarran-Ferguson or the act) was passed in 1945 in response to the Supreme Court's decision in *United States v South-Eastern Underwriters Assn.* (322 US 533 [1944]). *South-Eastern Underwriters* held that the business of insurance was part of interstate commerce, thus subjecting the insurance industry to federal regulation. In the wake of that holding, many states feared a federal takeover of insurance regulation, and feared that a takeover would threaten the power of states to tax and regulate the insurance industry (*Department of Treasury v Fabe*, 508 US 491, 499-500 [1993]).

In passing the act, Congress restored the supremacy of states in insurance regulation:

"Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States" (*id.* at 500, quoting 15 USC § 1011 [internal quotation marks omitted]).

McCarran-Ferguson further provides, "The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business" (*id.* at 497 n 3, quoting 15 USC § 1012 [a]).

Finally, the act states that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by

any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance" (*id.* at 500-501, quoting 15 USC § 1012 [b]). This clause establishes what the United States Supreme Court has described as a "clear-statement rule" (*Fabe*, 508 US at 507). While the federal government has the authority to regulate insurance, federal laws will be presumed not to reach insurance unless Congress expressly states an intent to do so. Thus, the McCarran-Ferguson Act gives states a dominant role in the regulation of insurance (*see id.* at 500).

### The *Monarch* Action

In the *Monarch* action, the motion court granted National Union's cross motion to compel arbitration and appoint an arbitrator and denied Monarch's petition to stay the arbitration. In so doing, the court noted that Monarch had executed the payment agreements, with the same arbitration clause, for seven years and therefore could not claim any surprise. Accordingly, the court found that National Union had demonstrated that the parties had an express agreement to arbitrate, and the arbitration clause was therefore enforceable. Further, the court found that an arbitrator should decide whether specific portions of the payment agreements were valid under California law.

### The *Priority Business Services* Action

In the *Priority Business Services* action, the motion court granted National Union's motion to compel arbitration and directed the parties to arbitrate their dispute. Citing the "strong federal policy encouraging arbitration" and the fact that the "business of insurance is commerce within the meaning of the Commerce Clause," the court found that the FAA "applies to this petition and motion" and that the arbitration clause is valid.

Further, the court found "unpersuasive" "Priority's contention that the FAA cannot preempt California Insurance Code § 11658." The court noted that the party challenging arbitration must show that application of the FAA would invalidate, impair, or supersede a state law enacted for the purpose of regulating insurance; thus, Priority would have to show an "inherent and direct conflict between California Insurance Code § 11658 and arbitration as a dispute resolution mechanism" (citing *Preston v Ferrer*, 552 US 346, 356 [2008]). However, the court found, Priority could not make such a showing because section 11658 "does not prohibit arbitration in insurance disputes in California," and in fact, does not even address arbitration.

The motion court also rejected the argument that the payment agreements were unenforceable because the insurance companies failed to file them for approval under section 11658. This argument, the court found, went to the merits of the underlying contract dispute; the California insurance laws were not impaired by the agreement to arbitrate. Thus, the court concluded that Priority had failed to show how application of the FAA would invalidate, impair, or supersede the filing requirement of section 11658.

As to the scope of the arbitration clause, the court found it broad enough to encompass Priority's challenge to the payment agreements. Further, the court noted, Priority had failed to assert fraud, unconscionability, duress, or some other challenge to the agreements' status as a legally binding contract. Thus, the court rejected Priority's assertions that it was challenging the specific provision, rather than the entire agreement. As a result, the court found, an arbitrator, rather than the court, should review Priority's claims.

The *Source One* Action

In the *Source One* action, that motion court denied National Union's motion to compel arbitration, finding that National Union had failed to show that the FAA preempted the California Insurance Code and failed to demonstrate that the payment agreements were not "policies" under California law.

Specifically, the court found that the McCarran-Ferguson Act, which effectuated the "federal policy of leaving regulation and taxation of the insurance industry to the States" (*see* 15 USC § 1011), precluded the FAA from preempting the California Insurance laws. The court noted that under section 1012 (b) of McCarran-Ferguson, "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." In so noting, the court rejected National Union's argument that, because California Insurance Code § 11658 did not "establish a framework for dispute resolution, . . . the FAA d[id] not invalidate, impair or supersede" it. The court found,

> "To the extent the arbitration and forum selection clauses are part of an insurance policy within the meaning of the Insurance Code . . . , if the court were to find that arbitration is contractually mandated under the FAA, despite the provisions'

undisputed non-compliance with the Insurance Code, then the court would be disregarding the Insurance Code on the basis of the FAA."

Hence, the motion court found, "[National Union] has not shown how mandating arbitration would not invalidate, impair or supersede the Insurance Code" and therefore had not "shown that the McCarran-Ferguson Act allows the FAA to preempt the Insurance Code."

The court dismissed as "inapplicable" National Union's argument that the FAA applied because Source One challenged the payment agreement as a whole and not simply the arbitration and forum selection clauses, citing, inter alia, *Prima Paint Corp. v Flood & Conklin Mfg. Co.* (388 US 395, 403-404 [1967]), for the proposition that "challenges to the validity of the contract, generally, are within the arbitrator's ken, whereas challenges to the arbitration clause are not." The court found that this argument is dependent on the FAA's supremacy, and therefore, not determinative of the issue in this dispute. The court also rejected National Union's argument that the payment agreements were not policies, finding that, contrary to National Union's argument, the payment agreements did "confirm the indemnity obligations and assumption of risk by [National Union]." However, the court found that the parties had not fully addressed the issue of whether the payment agreements were policies or components of policies within the meaning of the Insurance Code, and thus granted leave to replead.

National Union filed an amended verified petition to compel arbitration and a limited motion to reargue the motion court's holding that the California Insurance Code preempts the FAA under McCarran-Ferguson. The court denied the motion to reargue, finding that it had not overlooked governing law establishing that McCarran-Ferguson did not permit the Insurance Code to preempt the FAA.

The court rejected National Union's argument that the payment agreement was a credit agreement that permitted Source One to defer a significant portion of its premium and claim reimbursement obligations arising under the policies and thus, did not establish or govern the insurer's obligation to pay benefits to injured workers under California law. Indeed, the court noted, several provisions of the payment agreement reflected National Union's contractual intent to treat it and the policies as part of the same collective agreement.

In reaffirming its decision that the payment agreements were subject to section 11658, the court cited *Ceradyne, Inc. v*

*Argonaut Ins. Co.* (2009 WL 1526071, 2009 Cal App Unpub LEXIS 4375 [Cal Ct App, 4th Dist, June 2, 2009, No. G039873]), in which the California Court of Appeal found that an insurer's failure to file an arbitration and forum selection provision rendered the provision "unenforceable" and found the document containing the provision to be part and parcel of the complete insurance plan offered. The court further noted that "*Ceradyne* is consistent with a directive issued by the [CDI] . . . regarding the kind of workers compensation collateral agreements that are at issue in this matter."

The court distinguished *Grove Lumber & Bldg. Supply, Inc. v Argonaut Ins. Co.* (2008 WL 2705169, 2008 US Dist LEXIS 51752 [CD Cal, July 7, 2008, No. SA CV 07-1396 AHS(RNBx)]), a federal case decided before *Ceradyne*, because the payment agreement at issue there included the caveat that it did not change any of the terms or conditions of the policies or of the obligations or duties spelled out in the policies. In the *Source One* action, however, the payment agreement contained no such language.

Finally, the court rejected, as contrary to the plain language of California's regulations, National Union's argument that only agreements that would " 'modify, restrict or limit the *coverage obligation* of the insurer and insured under the policy' " were required to be attached to the policy or filed with the CDI. The court found that "the Payment Agreement is plainly a collateral agreement that modifies the obligations of the parties" and is subject to the filing requirements of section 11658.

The Parties' Positions on Appeal

In these appeals, the three insureds make the same argument regarding the payment agreements—namely, that the agreements are policies or endorsements that should have been filed with the CDI, and that National Union's failure to do so rendered the terms of those agreements unenforceable.

As to the McCarran-Ferguson Act, the insureds' arguments differ somewhat. Monarch argues that McCarran-Ferguson is irrelevant because Monarch is challenging the arbitration clause directly—that is, Monarch does not argue that the payment agreement itself is void, but rather, argues that section 11658 directly applies to the arbitration endorsement itself. Thus, Monarch concludes, the FAA is of no moment. For its part, Priority argues that McCarran-Ferguson prevents the FAA from preempting section 11658. Finally, Source One argues that McCarran-Ferguson "reverse-preempts" the FAA—that is, the

state law will be enforced—and thus, that the parties must comply with California law.[2]

By contrast, National Union argues, as it did in the motion court, that the payment agreements are neither policies nor endorsements, and therefore, it was not required to file the agreements with the CDI. Further, with respect to McCarran-Ferguson, National Union argues that California Insurance Code § 11658 does not establish a framework for dispute resolution, and thus, that the FAA does not invalidate, impair or supersede section 11658.

The McCarran-Ferguson Act

█ Because the arbitration clause and the payment agreements are void or unenforceable, we find that applying the FAA to mandate arbitration in this case would, in fact, invalidate, impair, or supersede the California Insurance Code. Therefore, the McCarran-Ferguson Act prevents the FAA from preempting the Code.

As noted above, "[t]he McCarran-Ferguson Act was an attempt to . . . assure that the activities of insurance companies in dealing with their policyholders would remain subject to state regulation" (*SEC v National Securities, Inc.*, 393 US 453, 459 [1969]; *see* 15 USC § 1011). Courts have established a four-part test to determine whether the McCarran-Ferguson Act precludes application of a federal statute (in this case, the FAA). Under this test, a federal statute is precluded if: (1) the statute does not "specifically relate" to the business of insurance; (2) the acts challenged under the statute constitute the "business of insurance"; (3) the state has enacted laws regulating the challenged acts; and (4) the state laws would be "invalidated, impaired, or superseded" by application of the federal statute (*Dornberger v Metropolitan Life Ins. Co.*, 961 F Supp 506, 516 [SD NY 1997], citing *Merchants Home Delivery Serv., Inc. v Frank B. Hall & Co., Inc.*, 50 F3d 1486, 1489 [9th Cir 1995]).

We agree with the determination of the *Source One* court in this action. First of all, the FAA does not specifically regulate

---

**2.** In its brief, Monarch agrees that McCarran-Ferguson reverse-preempts the FAA. However, Monarch argues, the arbitration clause is unenforceable whether or not the FAA applies because Monarch's challenge runs directly against the arbitration agreement—that is, section 11658 directly applies to the arbitration agreement itself because that section mandates the pre-approval of endorsements. Hence, Monarch is not requesting that we find the arbitration agreement void by virtue of its appearance in a larger, void contract.

the business of insurance, and an act specifically relating to the business of insurance is the only type of federal legislation that can preempt state insurance law under McCarran-Ferguson. Furthermore, application of the FAA would modify California law because it would mandate arbitration even though National Union did not, as required by California law, file the payment agreements, and the payment agreements, in turn, contained the arbitration clauses.

*Humana Inc. v Forsyth* (525 US 299, 310 [1999]) upon which National Union places much reliance, does not compel a result to the contrary. *Humana*, in fact, states, "When federal law does not directly conflict with state regulation, and when *application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application*" (*id.* at 310 [emphasis added]).[3] This language from *Humana* therefore supports the argument that the FAA does not apply to compel arbitration here.

Likewise, *Preston v Ferrer* (552 US 346 [2008]) does not mandate the result that National Union seeks. In *Preston*, the parties disputed whether California courts could invalidate an arbitration clause in a contract in light of the California Talent Agencies Act (Cal Labor Code § 1700 *et seq.*) (*Preston*, 552 US at 350-351). The California courts found in *Preston* that the California Labor Commissioner, not the arbitrator, was to determine whether a matter was arbitrable. The United States Supreme Court disagreed, finding that "[w]hen parties agree to arbitrate all questions arising under a contract, the FAA supersedes state laws lodging primary jurisdiction in another forum, whether judicial or administrative" (*id.* at 359).

*Preston*, however, differs from this case in one important way: it does not implicate McCarran-Ferguson. The act specifically leaves to the states any insurance policy regulation. Here, enforcing the FAA would, in fact, impair the California Insurance Code, as it would require the courts to enforce a provision that had not, contrary to California law, been filed with the WCIRB and the CDI.

The dissent's argument with respect to factors three and four of the four-part McCarran-Ferguson test takes too narrow a view. While California Insurance Code § 11658 does not provide

---

**3.** Notably, in quoting *Humana*, National Union leaves out language that we have italicized above.

any prohibition against arbitration, enforcing the arbitration clause in this case would nonetheless undermine the goals of California law relating to workers' compensation insurance by enforcing the arbitration provision in a payment agreement that National Union failed to file. Indeed, the filing requirements are a fundamental underpinning for California's regulation of workers' compensation insurance, and those filing requirements are intended largely to permit review of arbitration provisions—provisions, as we noted above, with which the CDI has stated that it is "particularly concerned."

Judicial Notice of the *Zurich* Action Settlement

Monarch, Priority and Source One have each made a motion asking this court to take judicial notice of the settlement in the *Zurich* action. Appellate courts in this state may take judicial notice of "official court record[s]" in other proceedings (*Kinberg v Kinberg*, 85 AD3d 673, 674 [1st Dept 2011]). Indeed, by order dated December 13, 2012, this Court granted Monarch's motion to take judicial notice of the order to show cause in the *Zurich* action. Therefore, we also now take judicial notice of the settlement in the *Zurich* action.

We note that the CDI order to show cause and settlement make clear that the CDI does, in fact, believe that side agreements are subject to regulatory statutes, and therefore, that those agreements are void if insurers fail to file them.[4] We further note that the CDI's interpretation of the Insurance Code receives weight under both California and New York law (*see State Farm Mut. Auto. Inc. Co. v Quackenbush*, 77 Cal App 4th 65, 71, 91 Cal Rptr 2d 381, 385 [Cal Ct App 1999]; *Matter of New York Pub. Interest Research Group v New York State Dept. of Ins.*, 66 NY2d 444, 448 [1985]).

The Applicability of *Ceradyne, Inc. v Argonaut Ins. Co.*

In resolving this appeal, we must decide the weight that we will afford to *Ceradyne, Inc. v Argonaut Ins. Co.* (2009 WL 1526071, 2009 Cal App Unpub LEXIS 4375 [Cal Ct App, June 2, 2009, No. G039873]), an unreported decision from the California Court of Appeal, as that decision is directly on point. On these appeals, the only motion court to address *Ceradyne* was the *Source One* court. In rejecting National Union's dismissal of *Ceradyne* because it was unpublished and thus could not be

---

4. We note that the prospective nature of the settlement is likely attributable to the fact that it was fashioned to make sure that Zurich did not have to pay fines.

cited to in California, the *Source One* court noted that "there is no . . . rule in New York which prevents the citation of unpublished decisions."

■ As National Union argues, and the insureds concede, the California Rules of Court prohibit citation to unpublished decisions (Cal Rules of Ct rule 8.1115). We are not, of course, bound by the California Rules of Court, nor do our own Rules of Court contain any prohibition against citing to unpublished opinions (*cf.* Rules of App Div, 1st Dept [22 NYCRR] § 600.10 [a] [11] ["(d)ecisions not reported officially or in the National Reporter System shall be cited from the most available source"]).

In California, the publication of opinions of the Court of Appeal and appellate division of the superior court is done on a selective basis (9 Witkin, California Procedure, Appeal § 814 at 833 [5th ed 2008]). The applicable court rule provides that the default is non-publication; cases must be certified for publication (*id.* at 884). The Rules of Court set forth nine specific circumstances under which cases "should be certified for publication" (Cal Rules of Ct rule 8.1105 [c]). However, the California state courts do not absolutely prohibit citation to unpublished cases. On the contrary, even the California Rules of Court allow citation to unpublished opinions under certain narrow circumstances (neither of which applies here) (*see* Cal Rules of Ct rule 8.1115 [b]).[5]

In this case, we need not adhere to California's Rules of Court regarding unpublished cases. To be sure, New York state courts routinely cite unreported cases of other jurisdictions (*see e.g. Sheila C. v Povich*, 11 AD3d 120, 128-129 [1st Dept 2004]; *People v Gee*, 286 AD2d 62, 69 [4th Dept 2001]).

Other jurisdictions have also considered unpublished California Court of Appeal cases, thus weakening National Union's argument that there is a prohibition against citing unpublished California cases even in jurisdictions other than California (*People v Lara*, 983 NE2d 959, 980, 368 Ill Dec 155, 176 [Ill 2012, Thomas, J., concurring]; *Monsanto Co. v Aetna Cas. & Sur. Co.*, 1990 WL 9496, *2 n 3, 1990 Del Super LEXIS 17, *6 n

---

**5.** In addition, as at least one California state court has noted, the California Rules of Court do not prohibit citation to unpublished federal cases; state courts may properly cite those cases as persuasive (although not precedential) authority (*Nungaray v Litton Loan Servicing, LP*, 200 Cal App 4th 1499, 1501 n 2, 135 Cal Rptr 3d 442, 444 [Cal Ct App, 2d Dist 2011]; *City of Hawthorne ex rel. Wohlner v H&C Disposal Co.*, 109 Cal App 4th 1668, 1 Cal Rptr 3d 312 [Cal Ct App, 2d Dist 2003]; *see also* Cal Rules of Ct rule 8.1115 [c]).

3 [Del Super Ct, Jan. 19, 1990]). Indeed, National Union's only response to this fact is to note that *"[Lara]* is an opinion of the Supreme Court of Illinois, and not a New York state court case" and that *"Monsanto . . .* is irrelevant because it is from the Delaware Superior Court, not New York." These two statements, of course, are manifestly obvious, but do not controvert the proposition that not all jurisdictions feel it necessary to observe California's prohibition against relying on unpublished California state court cases.

Notably, in none of its briefs on these appeals does National Union argue that *Ceradyne* is distinguishable, or that, if the case had been published, we could not apply it substantively. At the very least, then, we find that *Ceradyne* is persuasive authority, and we will consider its reasoning without relying on it as controlling authority.[6]

*Locke v Aston* (31 AD3d 33 [1st Dept 2006]) does not compel a different result. In *Locke*, we noted that the plaintiff had cited to an unpublished California opinion. However, the case to which we referred, *Kearney v Salomon Smith Barney, Inc.* (117 Cal App 4th 446, 11 Cal Rptr 3d 749 [2004]), was actually under review by the California Supreme Court at the time the case came up on appeal, and was "depublished" for that reason (14 Cal Rptr 3d 810, 92 P3d 310 [Cal 2004]). After review, the California Supreme Court issued its own opinion, affirming in part and reversing in part (39 Cal 4th 95, 45 Cal Rptr 3d 730 [2006]).

Whether the Payment Agreements are Endorsements

■ Even if the payment agreements are not precisely insurance policies, they do qualify as policy endorsements or agreements collateral to the policies; accordingly, National Union should have submitted the payment agreements to the CDI for approval. In point of fact, whether the agreements were more than mere financial documents was the least controversial of all the facts that the motion courts considered in the three cases on appeal. For example, the *Monarch* court made clear its belief that certain terms of the payment agreements—namely, the term allowing the insurer to change "any or all" unexpired policies under deductible plans to non-deductible plans for the remaining policy term—rendered them subject to the filing

---

**6.** One commentator has opined that the California court rule forbidding citation of unreported cases harks back to an era when only wealthier litigants had access to unpublished opinions (*see* Richard B. Cappalli, *The Common Law's Case Against Non-Precedential Opinions,* 76 S Cal L Rev 755, 757 [2003]).

requirements of section 11658. Similarly, the *Source One* court twice rejected National Union's argument that the payment agreements were mere financial documents. Indeed, the *Source One* court went so far as to suggest that the agreements might well constitute actual insurance policies under the law that National Union cited. Even the *Priority* court—the only one of the courts that rejected most of the insureds' arguments outright—did not find that National Union need not have filed the payment agreements; rather, the *Priority* court found that the issue was one that the arbitrators should determine.

We therefore find that National Union has failed to demonstrate that the payment agreements are not policies or endorsements under California law. On the contrary, where, as here, a contract alters large and important parts of the policies' scheme as it was originally issued, it qualifies as an endorsement even if the contract purports to be merely a loan agreement (*see e.g. Montgomery Ward & Co., Inc. v Imperial Cas. & Indem. Co.*, 81 Cal App 4th 356, 375, 97 Cal Rptr 2d 44, 56 [Cal Ct App, 2d Dist 2000]; *see also Haynes v Farmers Ins. Exch.*, 32 Cal 4th 1198, 1218-1219, 13 Cal Rptr 3d 68, 84-85 [2004, Baxter, J., dissenting]).

Thus, we reject National Union's argument that the payment agreements do not modify the parties' insurance obligations, as this argument bespeaks a myopic view of those obligations. Specifically, National Union seems to suggest that the parties' "payment obligations" apply only to National Union's obligation to provide insurance and the insureds' obligation to pay premiums. But the parties' obligations go further than a simple obligation to pay or be paid. For example, without the payment agreements, the parties' disputes concerning premiums paid are governed by California law and must be raised in a California court. By contrast, under the payment agreements, the parties are obliged to raise those same disputes in New York and under New York law, even though the insureds are all California employers whose employees are predominantly California residents. This requirement certainly modifies the parties' obligations, and in a significant way.

Additionally, the payment agreements modify the parties' obligations under the policies in even more substantive ways. For example, as the *Monarch* court noted, the agreements provide that if the insureds defaulted under the agreements, National Union had the right unilaterally to "change any or all unexpired Policies" from deductible to non-deductible plans,

and to concomitantly increase the premiums. The insureds' payment obligations also included "any amount paid by [National Union] to a claimant on [the insureds'] behalf." These changes directly alter the policies, and indeed, directly implicate the insureds' reasons for obtaining the policies in the first place. To accept National Union's claim that the payment agreements are simply secondary financial documents would require this court to ignore the actual terms of the agreements (see *Ceradyne*, 2009 WL 1526071, *10, 2009 Cal App Unpub LEXIS 4375, *28). Thus, under California law, while the payment agreements probably do not qualify as actual insurance policies, they do qualify as endorsements, and therefore, National Union should have filed them with the WCIRB for review by the CDI.

The Remedy for Failure to File

Although we have decided that National Union was, in fact, required to file the payment agreements, we must still decide the appropriate remedy for the failure to do so. National Union asserts that voiding the arbitration clause is too harsh a remedy, and at any rate, that section 11658 does not call for it.

As we have already stated, the CDI is the entity charged with carrying out California's insurance regulations. Thus, we give substantial weight to the CDI's stated policies regarding whether a particular agreement need be filed for approval (see *State Farm Mut. Auto. Ins. Co. v Quackenbush*, 77 Cal App 4th 65, 71, 91 Cal Rptr 2d 381, 385 [1999]; see also *Automotive Funding Group., Inc. v Garamendi*, 114 Cal App 4th 846, 851, 7 Cal Rptr 3d 912, 915 [Cal Ct App, 2d Dist 2003]). We therefore turn for guidance to the CDI directive dated February 14, 2011.

■ The directive's language makes clear that the appropriate penalty is to refuse to enforce the payment agreements. The directive states that agreements such as the one at issue here "may remain in place but shall be subject to review . . . if . . . unilaterally enforced." Further, with respect specifically to arbitration clauses, the directive states that those clauses are "unenforceable unless the insurer can demonstrate that the arbitration agreement was expressly agreed to by the insured at the time the policy was issued." Of course, the insureds could not have agreed to the arbitration clause when the policies were issued because the payment agreements did not exist at that time. Neither does it appear to matter to the CDI that an insured may have signed multiple payment agreements, each containing an arbitration agreement, over a course of years. On the contrary, the order to show cause in the *Zurich* action, dated

February 27, 2012, alleged that Zurich began issuing the purportedly unenforceable policies in or about May 2003.

*Ceradyne* is also instructive on the issue of whether the payment agreements are enforceable. The *Ceradyne* court noted that, based on the statutory language of section 11658 (a), "noncompliance with the mandatory review and pre-approval process renders the arbitration provision in the [payment agreement] unenforceable" (*Ceradyne*, 2009 WL 1526071, *11, 2008 US Dist LEXIS 51752, *32). Indeed, as the *Ceradyne* court noted, the language in both section 11658 and CCR title 10, § 2218 (a) "unequivocally states that all workers' compensation forms must be formally approved" (*id.*). Thus, "[w]orkers' compensation insurance programs are to be closely scrutinized and are highly regulated" (*id.*).

The court noted that, generally speaking, "[a contract made in violation of] a regulatory statute is void, . . . [however,] the rule is not an inflexible one to be applied in its fullest rigor under any and all circumstances" (*id.* [internal quotation marks omitted]). Rather, in "compelling cases," illegal contracts will be enforced in order to "avoid unjust enrichment to a defendant and a disproportionately harsh penalty upon the plaintiff" (*id.*). Whether an illegal contract will be enforced, the court stated, depends upon various factors, including the policy to be advanced in enforcing the law and the particular facts of the case (*id.*).

Using these factors, the *Ceradyne* court concluded that the arbitration clause was unenforceable because the "review and pre-approval safeguards were created to protect both employers and employees" (2009 WL 1526071, *11, 2008 US Dist LEXIS 51752, *33). Therefore, "[i]t would defeat the statutory purpose to allow an insurance company to bypass the governmental review process by simply waiting nine months after the policy has gone into effect to introduce additional or modified terms to its insurance program" (*id.*). The court also noted, "It cannot be overlooked that workers' compensation coverage is not optional for the employer" (*id.*).

We further find that, contrary to National Union's urging, the penalty of declining to enforce the arbitration agreements is not too harsh a remedy for failing to file the agreements. California courts addressing other California regulations have determined that, where a statute has been violated, courts should decline to enforce arbitration provisions (*see e.g. Smith v PacifiCare Behavioral Health of Cal.*, 93 Cal App 4th 139, 162,

113 Cal Rptr 2d 140, 157 [Cal Ct App, 2d Dist 2001]; *Imbler v PacifiCare of Cal., Inc.*, 103 Cal App 4th 567, 579, 126 Cal Rptr 2d 715, 724 [Cal Ct App, 4th Dist 2002]).

We need not determine whether the insureds challenge the arbitration clause itself, or rather, whether they challenge the entire agreement. If the payment agreements are void for failure to file them, as the *Ceradyne* court found when it examined the agreements there at issue, then those agreements' terms are also void (*see Rosenthal v Great Western Fin. Sec. Corp.*, 14 Cal 4th 394, 416, 58 Cal Rptr 2d 875, 888 [Cal 1996]).

Even were we to actually determine the issue, we would find that the insureds' oppositions to the petition to compel arbitration raised challenges to the validity of the arbitration clause only and that any challenge to the payment agreements was merely secondary. As the *Ceradyne* court noted when dealing with similar payment agreements, "[The insureds] never sought to set aside or deem void the other provisions relating to and incorporating the policy" (*Ceradyne*, 2009 WL 1526071, *12, 2009 Cal App Unpub LEXIS 4375, *35). Indeed, as the *Ceradyne* court also noted, it would have served no valid purpose for the insureds to do so, as many of the acceptable policy terms were duplicated in the payment agreements (*id.*).

Further, as National Union concedes, the insureds performed under the payment agreements for years, never challenging any of the agreements' substantive terms. Similarly, apart from their taking issue with the arbitration clauses, the insureds do not dispute that the payment agreements are binding. On the contrary, far from trying to set aside the payment agreements, the insureds are actually seeking to adjudicate their obligations under those agreements, but wish to do so in a court rather than before an arbitration panel.

In the *Monarch* appeal, National Union notes that, in 2010, the California legislature considered proposed Assembly Bill 2490; that bill would have amended the California Insurance Code to require that workers' compensation dispute resolution agreements, including arbitration clauses, be part of insurance forms or endorsements, and would have required that those agreements be filed with the CDI (*see* 2010 Cal Assembly Bill AB 2490 [Feb. 19, 2010], available at http://www.leginfo.ca.gov/pub/09-10/bill/asm/ab_2451-2500/ab_2490_bill_20100913_enrolled.html). National Union argues that had such a requirement already existed, there would have been no need to add one; thus, National Union concludes, when the parties executed the pay-

ment agreement, the law did not impose any requirement that insurers file the payment agreement or the arbitration clause with the CDI. To be sure, National Union notes, the governor vetoed the bill and it never became law.

This argument, however, lacks merit. Assembly Bill 2490 would have required insurers to include "dispute resolution provision[s]" in the body of the policy or endorsement (*id.*), and no one disputes that those documents are subject to mandatory filing with the WCIRB and the CDI. The bill, however, did not speak to the relevant issue here—namely, whether documents such as the payment agreements, which alter the terms of an insurance policy, should be filed for review. Nor did the bill's ultimate failure to be signed into law resolve that issue.

The dissent gives short shrift to the California Court of Appeal's reasoning in *Ceradyne*, stating that the decision is "not instructive" on the point of whether National Union challenges the payment agreements as a whole, or whether it challenges only the arbitration provisions. However, as we have noted, not even National Union takes the position that *Ceradyne* is irrelevant to any of the issues set forth here; instead, National Union merely takes the position that we may not rely on the case because it is unpublished in California.

Similarly, the dissent asserts that *Rent-a-Center, West, Inc. v Jackson* (561 US 63 [2010]) forecloses the California Court of Appeal's reasoning in *Ceradyne* and compels the result that National Union seeks here. *Rent-a-Center*, however, does not affect our analysis, as that case did not change the principle that where a party challenges the validity of an arbitration provision alone, rather than challenging the validity of the whole agreement, the court, and not the arbitrators, decide arbitrability. As we have already noted, the insurers never sought to deem void any provisions of the payment agreements other than the arbitration provisions. On the contrary, the insureds performed under the agreements, seeking to challenge any of the agreements' provisions only after a dispute arose and the insureds sought to have that dispute adjudicated in a court rather than before an arbitrator.

As the dissent notes, there is a strong public policy in favor of arbitration. Indeed, this Court has reaffirmed its commitment to this policy in numerous decisions (*see e.g. Oxbow Calcining USA Inc. v American Indus. Partners*, 96 AD3d 646, 648 [1st Dept 2012]; *Matter of Kern v Krackow*, 309 AD2d 650, 651 [1st

Dept 2003]). We cannot, and do not, repudiate that policy in our decision on these appeals.

However, as previously stated, the California regulatory and statutory scheme requires close scrutiny of workers' compensation insurance programs. Thus, the policy in favor of arbitration must yield to the primacy of California state law and to California's prerogative to regulate its own insurance practices. This conclusion holds particularly true given the CDI's position, as demonstrated in the *Zurich* action and the settlement of that action, that any workers' compensation carrier that fails to file a side agreement in California is foreclosed from enforcing any arbitration clause contained in that agreement. Accordingly, the dissent begs the question when it concludes that the arbitrator must decide the issue of arbitration in the first instance. This conclusion would lead to the anomalous result, even before we actually decided the issue, that National Union may enforce an arbitration clause set forth in a payment agreement even though that payment agreement has never been filed as required by California law—the very outcome that National Union seeks here and that this Court is bound to decide.

Similarly, the dissent's point that the settlement agreement allows binding arbitration, and thus, that the CDI has "no fundamental opposition to arbitration clauses," does not change our analysis. The relevant issue is whether the agreements were filed as mandated by section 11658, and no party disputes that the payment agreements were not filed.

Accordingly, the order of the Supreme Court, New York County (Jeffrey Oing, J.), entered January 31, 2012, which denied the petition by petitioners Monarch Consulting, Inc., Elite Management, Inc., Brentwood Television Funnies, Inc., Professional Employer Options, Inc., Recurrent Software Solutions, Ahill, Inc., The Accounting Group, LLC and Pes Payroll, IA, Inc., to stay arbitration and granted the cross petition by National Union Fire Insurance Company of Pittsburgh, PA. to compel arbitration, should be reversed, on the law, without costs, the petition granted and the cross petition denied. The order and judgment (one paper) of the Supreme Court, New York County (Shirley Werner Kornreich, J.), entered on or about April 18, 2012, which, insofar as appealed from as limited by the briefs, granted the petition by National Union to compel arbitration, should be reversed, on the law, without costs, and the petition denied. The order of the Supreme Court, New York County (Eileen Bransten, J.), entered July 30, 2012, which,

insofar as appealed from as limited by the briefs, denied the amended petition by petitioner National Union to compel arbitration, should be affirmed, without costs. The appeal from the order of the same court and Justice, entered August 1, 2011, which denied National Union's original petition to compel arbitration with leave to replead, should be dismissed, without costs, as academic.

GISCHE, J. (dissenting). Before we even reach the issue regarding whether the payment agreements are legally enforceable, the court first needs to determine whether it is the court or the arbitrators that decide the issue. I respectfully dissent because I believe that at this stage of the dispute the arbitrators, and not the court, should decide the gateway issue of whether the payment agreements containing the arbitration clauses are enforceable.

In each of the three cases before the court, the insurance companies issued workers' compensation policies to the insureds which covered workers in the State of California. The original insurance policies that were issued were filed with the Workers' Compensation Insurance Rating Bureau (WCIRB) in accordance with California Insurance Code § 11658. Separately made agreements among the parties concerning the insureds' payment obligations under the policies (payment agreements) were never filed with the WCIRB. Each of the payment agreements contains provisions requiring that all disputes among the parties related to the agreements be resolved by arbitration. The arbitration provisions are broad, reserving for the arbitrators the right to decide all disputes, expressly including any issues regarding arbitrability. Although the insureds seek only to invalidate the arbitration provisions in each of the payment agreements, based on the insurer's failure to file the payment agreements with the WCIRB, this necessarily and inextricably implicates the validity of the payment agreements as a whole. Consequently, pursuant to the parties' respective payment agreements and the United States Federal Arbitration Act (9 USC § 1 *et seq.*) (FAA), the underlying legal issue regarding the validity of the payment agreements should be decided by the arbitrators in the first instance.

In each of these cases, the primary provisions of the underlying payment agreements extended the time within which the insured was required to pay its premiums conditioned on the posting of collateral. Each payment agreement also contained an arbitration clause requiring that any disputes regarding the

payment obligations as well as "any other unresolved dispute arising out of this agreement" be arbitrated. The payment agreements all state that the arbitrators "will have exclusive jurisdiction over the matter in dispute, including the question as to its arbitrability." Each payment agreement also provides that the arbitration "must be governed by the United States Arbitration Act. Title 9 USC Section 1, et seq."

There is a strong public policy in favor of arbitration. Agreements to arbitrate that fall within the ambit of the FAA must be enforced according to their terms (*see KPMG LLP v Cocchi*, 565 US —, * —, 132 S Ct 23, 24 [2011]; *Flanagan v Prudential-Bache Sec.*, 67 NY2d 500, 506 [1986]; *Matter of Smith Barney Shearson v Sacharow*, 91 NY2d 39 [1997]).

The disputes presently before the court involve whether the agreement to arbitrate is valid and who should make that decision. The primary argument by the insureds is that the payment agreements are part of the overall workers' compensation insurance policies which, pursuant to California Insurance Code § 11658, must be filed with the WCIRB so that the Commissioner of Insurance can have a 30 day period to review whether the policies comply with applicable law. Because the payment agreements were never filed, the insureds argue that the arbitration provisions contained therein are invalid and unenforceable.

FAA § 2 "embodies the national policy favoring arbitration and places arbitration agreements on [an] equal footing with all other contracts" (*Buckeye Check Cashing, Inc. v Cardegna*, 546 US 440, 443 [2006]). Like any other contract, arbitration agreements may be invalidated by generally applicable contract defenses, such as fraud, duress or unconscionability (*Doctor's Associates, Inc. v Casarotto*, 517 US 681 [1996]). FAA § 2 provides:

> "A written provision in . . . contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract" (9 USC § 2).

In interpreting FAA § 2, the Supreme Court of the United States has repeatedly held that where a party's challenge is to the contract as a whole, and not specifically related to the arbitration clause, the issue of the contract's validity is

considered by the arbitrator in the first instance (*see Rent-A-Center, West, Inc. v Jackson*, 561 US 63 [2010]; *Buckeye Check Cashing, Inc. v Cardegna*, 546 US 440 [2006]; *Prima Paint Corp. v Flood & Conklin Mfg. Co.*, 388 US 395 [1967]). As explained by the Supreme Court in its most recent decision on the issue:

> "There are two types of validity challenges under § 2: One type challenges specifically the validity of the agreement to arbitrate, and [t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid. . . . [W]e held that only the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable. That is because § 2 states that a written provision to settle by arbitration a controversy is valid, irrevocable, and enforceable *without mention* of the validity of the contract in which it is contained. Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate. [A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract" (*Rent-A-Center*, 561 US at 70) [internal quotation marks and citations omitted]).

Although the insureds in this case claim that they are only attacking the validity of the arbitration clauses, and that the validity of those clauses should be decided by the court and not the arbitrators, this position does not withstand scrutiny. If the failure to file the payment agreements with WCIRB renders the arbitration provisions unenforceable, it would likewise render all other provisions of the payment agreements unenforceable for the same reason. Consequently, the impact of the insureds' argument is not limited solely to the arbitration clauses contained within the payment agreements. Nor do we know, as the majority suggests, that the insureds have no intention of pursuing a claim that the payment agreements are unenforceable in toto once that issue is before an appropriate tribunal.

The difficulty of conceptually, logically and legally separating enforceability of the arbitration clauses from the validity of the

payment agreements as a whole is manifest. Even the majority's reasoning is based on a conclusion that because the payment agreements as a whole are unenforceable, the arbitration provisions contained therein are likewise unenforceable. While I take no position on the majority's legal analysis on the ultimate issue of enforceability, it demonstrates that the insureds' failure to file argument is fundamental to the validity of the entire payment agreement and not just limited to the arbitration clauses.

I also disagree with the majority's conclusion that pursuant to the McCarran-Ferguson Act, inverse preemption precludes application of the FAA. The McCarran-Ferguson Act (15 USC § 1012 [b]) provides that no act of Congress shall be construed to invalidate, impair or supercede any state law enacted for the purpose of regulating the business of insurance. Courts will preclude the application of a federal statute if the four following factors are all established: (1) the statute does not "specifically relate" to the business of insurance; (2) the acts challenged under the statute constitute the "business of insurance"; (3) the state has enacted laws regulating the challenged acts; and (4) the state laws would be "superceded, impaired or invalidated" by application of the federal statute (*Securities Exch. Commn. v Waltzer & Assoc.*, 122 F3d 1057, *2 [2d Cir 1997]; *Merchants Home Delivery Serv., Inc. v Frank B. Hall & Co., Inc.*, 50 F3d 1486, 1489 [9th Cir 1995]).

While I agree with the majority that factors (1) and (2) are satisfied, I disagree with its finding that factors (3) or (4) are satisfied. Neither California Insurance Code § 11658, nor any other provision of the California Workers' Compensation Laws, provide an express or implied prohibition against arbitration in insurance disputes (*see e.g. ESAB Group, Inc. v Zurich Ins. PLC*, 685 F3d 376 [4th Cir 2012] [recognizing that South Carolina Law invalidating arbitration agreements in insurance policies reverse preempts chapter 1 of the FAA to domestic insurance polies under McCarran-Ferguson Act]; *McKnight v Chicago Tit. Ins. Co., Inc.*, 358 F3d 854 [11th Cir 2004] [Georgia Arbitration Code excluding arbitration provisions in insurance contracts warranted reverse preemption of FAA under McCarran-Ferguson Act]). The settlement in the *Zurich* action (*Matter of Zurich Am. Ins. Co.*, Cal Ins Commr, file No. DISP-2011-00811) demonstrates that the California Department of Insurance has no fundamental opposition to arbitration clauses, because the agency approved and expressly agreed that all future forms of the agreements at issue in that litigation would

continue to require binding arbitration for the resolution of disputes.

Relatedly, arbitration does not impair the California legal requirement that workers' compensation insurance policies must be filed, thereby providing the Commissioner of Insurance with an opportunity to review the policies, because California law does not restrict the power of an arbitrator to address whether the payment agreements in these cases were required to be filed, and if so, what the consequences for the failure to file the agreements would be (*In re Arbitration Between Natl. Union Fire Ins. Co. of Pittsburgh, P.A. v Personnel Plus, Inc.*, 954 F Supp 2d 239 [SD NY 2013]; *Grove Lumber & Bldg. Supply, Inc. v Argonaut Ins. Co.*, 2008 WL 2705169, 2008 US Dist LEXIS 51752 [CD Cal, July 7, 2008, SA CV 07-1396 AH-S(RNBx)]; *St. Paul Fire & Mar. Ins. Co. v Courtney Enters., Inc.*, 270 F3d 621 [8th Cir 2001]).

While acknowledging that the case has no precedential value, the majority finds the reasoning of the California Court of Appeal in the case of *Ceradyne, Inc. v Argonaut Ins. Co.* (2009 WL 1526071, 2009 Cal App Unpub LEXIS 4375 [Cal Ct App, 4th Dist, June 2, 2009, No. G039873]) persuasive and informative. Most of *Ceradyne* addresses the merits of the insured's arguments concerning whether the failure to file a payment agreement rendered the arbitration clauses contained therein unenforceable. Because I believe that this court should not reach the merits of the parties' arguments regarding enforceability, I neither agree nor disagree with the reasoning of *Ceradyne* on those issues. The *Ceradyne* Court did not reach the issue of whether the McCarran-Ferguson Act applies. What the *Ceradyne* Court held was that the trial court and not an arbitrator should decide whether arbitration was precluded by the insurance company's failure to file the payment agreement. It reasoned that because the insured was only looking to invalidate the arbitration clause, which by its express terms was severable from the remainder of the agreement, the court should sever and consider the issues of enforceability only as they pertained to the arbitration clauses. In *Rent-A-Center*, decided after *Ceradyne*, the Supreme Court of the United States held that as a matter of substantive federal law, an arbitration clause is severable from the remainder of the contract, regardless of whether there is an express contractual provision that so provides. Notwithstanding severability, the Supreme Court enforced the arbitration clause to the extent it delegated authority to the

arbitrator to decide whether the arbitration clause was enforceable, where the argument of unconscionability affected the entire agreement. I therefore believe that the *Ceradyne* analysis on this point, which is contrary to Supreme Court precedent, is not instructive.

For these reasons I would vote to reverse the order which denied the insurer's motion to compel arbitration and to affirm the orders which denied the insureds' petitions to stay arbitration, and granted the insurer's cross petitions to compel arbitration.

TOM, J.P. and SWEENY, J., concur with MOSKOWITZ, J.; MANZANET-DANIELS and GISCHE, JJ., dissent in a separate opinion by GISCHE, J.

Order, Supreme Court, New York County, entered January 31, 2012, reversed, on the law, without costs, the petition granted, and the cross petition denied. Order and judgment (one paper), Supreme Court, New York County, entered on or about April 18, 2012, reversed, on the law, without costs, and the petition denied. Order, Supreme Court, New York County, entered July 30, 2012, affirmed, without costs. Appeal from order, same court and Justice, entered August 1, 2011, dismissed, without costs, as academic.

Motions to take judicial notice granted.